A98A2147. ALEXANDER v. THE STATE.
(511 SE2d 249)

BEASLEY, Presiding Judge.

Alexander was convicted of five counts of armed robbery, OCGA § 16-8-41, and other offenses. Charges of possession of a firearm by a convicted felon were then nolle prossed. Alexander's punishment included consecutive sentences of life imprisonment for two of the armed robberies. His motion for new trial was denied. The questions

presented are whether the evidence is sufficient to support the verdict and whether a new trial is required because the prosecutor was allowed to pose leading questions to a State's witness who refused to respond to initial questioning.

Six eyewitnesses positively identified Alexander as having perpetrated armed robberies against five different victims during a three-month period. Some of the witnesses provided a description and tag number of a getaway car driven by Alexander's accomplice.

Two of victim Knox's neighbors testified they observed Alexander appear at their apartment complex in a gray Dodge Omni with a Florida tag driven by another individual. He exited the car, proceeded in a furtive manner to Knox's apartment, departed from it in possession of both a pocketbook and gun, reentered the car and left. The neighbor of another victim similarly identified Alexander as the man who committed an armed robbery at an apartment in a different complex and left in the same vehicle described above. Each of the three remaining victims testified that Alexander accosted them at their residences and took their purses at gunpoint after they exited their cars. One testified that after robbing her, Alexander jumped into a gray car and got away.

Several days after the last robbery, Alexander was stopped driving the Omni after taking evasive action to avoid being stopped at a roadblock. He gave the arresting officer a false name, possessed neither a license nor proof of insurance, and fled.

During questioning by the investigating officer, Alexander admitted robbing one victim but denied possessing a weapon. In Alexander's taped statement, which was played to the jury, he admitted snatching Knox's purse. Police obtained information implicating Tucker and discovered a firearm during a search of his house. The investigating officer testified that when shown the weapon, Tucker exclaimed that it belonged to Alexander. Additional testimony given by the officer showed that Tucker led police to an item taken in the Knox robbery and that, during a subsequent search of Alexander's home, another item taken in that robbery was found.

When Tucker was called as a State's witness at Alexander's trial, a hearing was held absent the jury to determine whether he wished to have an attorney present. Tucker stated he had already consulted with an attorney, informed him that he did not want to testify, and was advised to simply invoke his Fifth Amendment rights. The court allowed the State to call Tucker to testify.

When asked to state his name, Tucker did invoke his right to remain silent. At the request of the prosecuting attorney, Tucker was granted immunity from the use of his testimony or any information

derived therefrom and ordered to testify.[1] His refusal to respond to any questions resulted in numerous contempt adjudications. Over defense objection, the prosecuting attorney was permitted to ask Tucker a series of leading questions which suggested the answers sought. Through them, the jury could infer that Tucker was tried on the same armed robbery charges as was Alexander and was convicted of one count; that when a gun was found during the search of Tucker's home, he exclaimed that the gun belonged to Alexander; and that Tucker gave a statement to police implicating himself and Alexander in the armed robberies. In Tucker's written statement, which was placed in evidence, he admitted driving Alexander to and from the scene of four armed robberies committed by Alexander, but he professed ignorance of what Alexander had done until after commission of the crimes.

Defense counsel, also through leading questions during cross-examination, sought to show that Tucker did not implicate Alexander until the police found the gun in Tucker's house and then convinced him that identifying Alexander as the main culprit would benefit himself.

1. Alexander contends the State's questioning of Tucker constituted a violation of his Sixth Amendment right to confront the witnesses against him. In view of the holding of *Lingerfelt v. State*,[2] and its progeny,[3] we agree. In *Lingerfelt*, the State called a co-indictee to testify against the accused. Using a transcript from a prior commitment hearing, the State asked the witness leading questions that suggested to the jury the answers the witness had previously given. However, at trial the witness did not actually answer the questions posed. Moreover, the witness refused to answer questions posed by the defendant's attorney on cross-examination. In reversing Lingerfelt's conviction, the Supreme Court found that "[c]onfrontation in a criminal trial really means the right to ask questions and secure answers from the witness confronted."[4]

Despite the express language of *Lingerfelt*, the State contends it had a "right" to ask leading questions of Tucker. The trial court apparently agreed because it allowed additional questioning over Alexander's objection. However, the State has no right to ask leading questions of a witness such as Tucker, a co-indictee who has refused to testify. Such questioning is tantamount to the State testifying on behalf of a recalcitrant witness and serves to abrogate a defendant's

---

[1] OCGA § 24-9-28.
[2] 235 Ga. 139 (218 SE2d 752) (1975).
[3] *Lawrence v. State*, 257 Ga. 423, 424 (3) (360 SE2d 716) (1987); *Greenwood v. State*, 203 Ga. App. 901 (1) (418 SE2d 160) (1992).
[4] 235 Ga. at 140.

fundamental right to confront, question and secure answers from his accusers.

Alexander also maintains that the introduction of Tucker's custodial statement in violation of *Bruton v. United States*[5] constituted harmful error. "Since there was no *Bruton* objection at trial, [Alexander] is foreclosed from raising this claim on appeal."[6] Nonetheless, *Bruton* does provide the appropriate framework for assessing the harm created by denial of the right of cross-examination. The analysis is the same as that undertaken in *Hardy v. State*[7] but leads to an opposite result.

" 'The mere finding of a violation of the *Bruton* rule in the course of the trial . . . does not automatically require reversal of the ensuing criminal conviction. . . .' [Cit.]"[8] Where evidence contained in the confession was established by other evidence, its admission in violation of the *Bruton* rule is considered cumulative and therefore harmless.[9]

In determining whether a *Bruton* violation constitutes harmful error, " 'our judgment must be based on our own reading of the record and on what seems to us to have been the probable impact of the . . . (confession) on the minds of an average jury.' [Cit.]"[10] "The factors which we must consider 'include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted . . ., and, of course, the overall strength of the prosecution's case.' [Cit.]"[11]

Moreover, the determination of harm caused by violation of a federal constitutional right, such as the Sixth Amendment right of confrontation, has to be made based upon United States Supreme Court standards and not state standards.[12] In the case at bar, violation of the right requires reversal unless we find that the violation was harmless beyond a reasonable doubt.[13]

Tucker's confession implicating Alexander in the armed robberies was corroborated by a number of witnesses who positively identified Alexander as the perpetrator of each armed robbery.[14] Alexander

---

[5] 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968).

[6] *Haynes v. State*, 269 Ga. 181, 182 (2) (496 SE2d 721) (1998).

[7] *Hardy v. State*, 223 Ga. App. 597, 600-603 (478 SE2d 423) (1996) (Beasley, C. J., concurring specially).

[8] *Reddish v. State*, 238 Ga. 136, 138 (1) (231 SE2d 737) (1977).

[9] *Rachel v. State*, 247 Ga. 130, 135 (4) (274 SE2d 475) (1981).

[10] *Hardy v. State*, supra at 601.

[11] Id. at 602.

[12] *Farley v. State*, 225 Ga. App. 687, 692 (484 SE2d 711) (1997).

[13] *Harrington v. California*, 395 U. S. 250, 253 (89 SC 1726, 23 LE2d 284) (1969).

[14] Compare *Hardy v. State*, supra.

admitted committing one of the robberies, and other evidence tied him to that crime. Although he denied being in possession of a gun, two eyewitnesses testified otherwise. When apprehended, he was also driving the getaway car used in that robbery and others. Tucker's attribution of ownership of the gun to Alexander was shown by the investigating detective's testimony as well as by the leading questions. Alexander had opportunity to challenge the reliability of Tucker's effort to implicate him in the crimes through leading questions posed by defense counsel's cross-examination.

Under all the significant circumstances, particularly the overwhelming evidence of Alexander's guilt, we conclude that to the extent Tucker's refusal to respond to questioning deprived Alexander of his constitutional right to confront him, the constitutional violation was harmless beyond a reasonable doubt.[15]

2. Alexander's challenge to the sufficiency of the evidence, excluding the impermissible back-door evidence, lacks merit.[16]

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED JANUARY 28, 1999.

*Elaine T. McGruder*, for appellant.
*Robert E. Keller, District Attorney, Adrian Britt, Assistant District Attorney*, for appellee.

---

[15] This is the rigorous standard for a federal constitutional violation. *Delaware v. Van Arsdall*, 475 U. S. 673, 684 (106 SC 1431, 89 LE2d 674) (1986).
[16] See generally *Josey v. State*, 199 Ga. App. 780, 781 (2) (406 SE2d 125) (1991).