A91A2145. CRAWFORD v. THE STATE.
(416 SE2d 820)

SOGNIER, Chief Judge.

Danny Leroy Crawford was convicted of two counts of armed robbery, and he appeals.

1. We find no merit in appellant's contention that the trial court's action in response to alleged improper comments by the prosecutor was inadequate because under OCGA § 17-8-75 the trial court was required both to rebuke the prosecutor and to give curative instructions, and in the absence of both actions the trial court should have granted his motion for a mistrial. The only comment contained in the transcript was the comment by the prosecutor that defense counsel's handling of the opening statement (during which defense counsel apparently called into question every statement made by the prosecution) constituted a "shoddy practice." The trial court then explained in open court that defense counsel was not implying that the prosecutor was lying but was only expressing that his opinion of the evidence and what the evidence would prove was different from the prosecutor's opinion. The trial court stated that defense counsel's argument was proper, and then informed counsel that any further extraneous remarks from anyone would result in the offending party being held in contempt of court.

Even assuming the prosecutor's comments came within the ambit of OCGA § 17-8-75, the statements made by the trial court fully removed from the minds of the jury the false impression that defense counsel's opening statement was improper. This court has held that where the trial court fully instructs the jury to disregard the remark, that amounts as well to a rebuke of counsel. *Quaid v. State*, 132 Ga. App. 478, 483 (208 SE2d 336) (1974). Therefore, we agree with the State that an additional statement rebuking the prosecutor was not necessary here. Id. Further, " '[a]lthough some occurrences at trial may be too clearly prejudicial for such a curative instruction to mitigate their effect, the comment in this case is hardly of such character.' [Cit.]" Id. at 484. Therefore, the trial court did not err by denying appellant's motion for mistrial.

2. Appellant contends the trial court erred by admitting the taped confession of Geneva Griffin, who was indicted on the same charges but whose trial was severed from that of appellant. Griffin refused to testify at appellant's trial, invoking her marital privilege as appellant's common law wife. OCGA § 24-9-23. Notwithstanding the co-indictee's unavailability for purposes of cross-examination, the trial court admitted Griffin's confession, made outside appellant's presence to a police officer after her arrest, in which she stated that she accompanied appellant when he committed the two armed robberies in issue.

The admission of this evidence was error because it violated appellant's Sixth Amendment right to confront and cross-examine witnesses against him, as well as the provisions of OCGA § 24-3-52. *Crowder v. State*, 237 Ga. 141 (227 SE2d 230) (1976); *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968). We find completely distinguishable the case on which the State relies, *Higgs v. State*, 256 Ga. 606, 607-609 (2-7) (351 SE2d 448) (1987), in which the Supreme Court affirmed the admission of hearsay evidence consisting of statements by a witness who was unavailable to testify because of marriage to the defendant shortly before trial. The witness in *Higgs* was not a joint offender and thus the admission of her statements was not prohibited by OCGA § 24-3-52.

However, a violation of a defendant's Sixth Amendment right of confrontation can be harmless where the evidence of guilt is overwhelming and the minds of an average jury would not have found the State's case significantly less persuasive had the admitted testimony been excluded. *Short v. State*, 256 Ga. 172, 173 (3) (345 SE2d 344) (1986). Thus, we turn to the evidence adduced at trial.

To prove appellant's commission of the first armed robbery in issue, that of a convenience store, the State introduced the testimony of the store cashier who positively identified appellant as the man who robbed her at gunpoint. She testified appellant had been a fre-

quent customer at the store months before the robbery, at which time his appearance had been "clean cut," and that she noticed his appearance had markedly deteriorated at the time of the robbery. The witness testified she had had no difficulty picking out appellant's photo from the ten-picture photographic lineup she was shown a month after the robbery. The witness identified State's Exhibit 14, a pistol, as being similar to the one used by appellant during the robbery. The witness also testified that the woman with appellant left the store before him carrying a 12 pack of beer. Another witness testified that he was outside the store in question at the gas pumps when he saw a woman exiting the store carrying a 12 pack of beer. His attention was drawn shortly thereafter to a man exiting the store by the sound of metal dropping on the ground. The witness testified he noticed a gun on the ground which was picked up by the man leaving the store. The witness saw the man with the gun and the woman with the beer leave together in a light blue Lincoln Continental, and he testified that the car he saw was similar to the photograph of the car in State's Exhibit 2. Testimony by police officers established that appellant was apprehended two days after the convenience store robbery while sitting in a van at the home of Griffin's parents; that the light blue Lincoln Continental depicted in State's Exhibit 2 was parked in the yard next to the van at that address and belonged to Griffin's mother; and that the pistol in State's Exhibit 14 was found in a box in the van along with several pink hair curlers.

The second count charged appellant with armed robbery of a liquor store two days after the convenience store robbery. The cashier in the second incident positively identified appellant as the man who robbed her at gunpoint while accompanied by a woman wearing pink curlers in her hair. The cashier also verified the accuracy of the videotaped recording of the incident made by the store's security camera and identified the man in the tape as appellant. The videotape, which also had sound, was played for the jury. The tape shown depicted two portions of the robbery; the first showed the robber holding a pistol on the cashier ordering her to hurry the opening of the cash register while a woman in light-colored hair curlers stood near the register; the second showed the robber forcing the cashier to the back of the store at gunpoint, pushing her behind some boxes, then walking directly toward the security camera, at which point the view of the robber was unobstructed. The lighting on the tape was good, the sound distinct, and the focus only slightly blurred. Another witness testified that while walking past the liquor store, he saw a man holding a gun to the cashier's head and a woman with pink curlers in her hair.

Although as to the second robbery appellant stresses certain discrepancies between the robbery depicted in the videotape and the testimony of the witnesses to that crime regarding the perpetrators'

clothing, we cannot agree with appellant that these minor matters affected the weight of the evidence, which overwhelmingly manifested appellant's guilt. Therefore, we conclude that the error in the admission of Griffin's confession in violation of appellant's Sixth Amendment right of confrontation does not require reversal. *Short,* supra.

3. Appellant contends the trial court erred by failing to instruct the jury to return a verdict on each armed robbery count. The record does not reflect that appellant requested that the jury be charged on any particular verdict form. The transcript reveals that the trial court in its charge read the indictment to the jury and clearly set forth that appellant was charged with two separate counts of armed robbery. After the jury was charged, a negative response was made to the trial court's inquiry whether appellant had any objection to the charge and no reservation of the right to object was made. When the jury returned its guilty verdict, the prosecutor expressed doubts whether the verdict covered both counts. The trial court inquired of the jury whether they intended to return a guilty verdict on both counts; the transcript does not reflect a verbal response to the trial court's question. However, based on the jury's reaction, the prosecutor inquired whether they should ask the jury foreman "to so endorse that . . . on the indictment," which was done.

"Because appellant stated that he had no exceptions when the court made inquiry, he waived his right to raise the issue on appeal. [Cit.] While it is true that this court shall consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether or not objection was made (OCGA § 5-5-24 (c)), appellant has not shown that the allegedly erroneous [omission] was blatantly apparent and prejudicial to the extent that it raises a question whether he has been deprived, to some extent, of a fair trial. [Cits.]" *Maynard v. State,* 171 Ga. App. 605, 606 (2) (320 SE2d 806) (1984). Since the record indicates that the trial court clarified the jury's intentions, there is no merit in appellant's contention.

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED MARCH 5, 1992.

*Evans & Ward, Donald E. Evans,* for appellant.
*Michael C. Eubanks, District Attorney, Richard E. Thomas, Nancy J. Berger, Assistant District Attorneys,* for appellee.