## A93A0683. COBB v. THE STATE.
(434 SE2d 513)

BIRDSONG, Presiding Judge.

Appellant William Cobb was convicted of several counts of child molestation and incest, involving his daughter and niece. He contends he was erroneously denied a new trial and was denied effective assistance of trial counsel. He enumerates more than 20 additional errors in the trial. *Held*:

1. In arguing to sustain the conviction, the State relies, as citation of authority, on a newspaper publication. Rule 11 (c) of this court

requires citation of cases by "volume and page of the Official Report (Harrison or Darby)." This citation of a newspaper publication in violation of court rules subjects the offending party subject to sanctions. As to appellants, see Rule 15 (c) (2). An appellee risks being held in contempt (Rule 7) and any argument based on a citation of authority from a newspaper or other non-official publication as provided in Rule 11, shall be disregarded.

2. Evidence of alleged "similar transactions" was admitted without a prior hearing on admissibility as required by Uniform Superior Court Rule 31.1, and by *Williams v. State*, 261 Ga. 640, 641 (409 SE2d 649). This was error. Failure to hold the required hearing "raises a substantial possibility that the jury could have settled upon the guilt of the defendant based solely upon evidence of a large number of similar transactions, and before hearing a single witness to the *indicted* offenses." *Gilstrap v. State*, 261 Ga. 798, 799 (410 SE2d 423). See also *Harmon v. State*, 259 Ga. 444 (2) (383 SE2d 874); *Minter v. State*, 258 Ga. 629, 630 (373 SE2d 359); *Preston v. State*, 257 Ga. 42, 45 (354 SE2d 135).

3. The State introduced evidence of criminal molestation acts against others by other males, including appellant's father. This evidence was irrelevant and prejudicial as to appellant, for it served only to imply his guilt by association. The fact that trial counsel in some instances failed to object to such evidence does not excuse the error or the harm caused, in the face of the claim of ineffective assistance of trial counsel. It is highly probable this injection of irrelevant, prejudicial evidence did contribute to the verdict. *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869).

4. The trial court erroneously and over objection allowed the State to ask appellant's daughter whether she had heard her brothers tell her mother what appellant had done to them, to which the victim responded that she had. She was further drawn to say she had heard her brothers tell her mother that appellant had "messed" with them, and that her mother had repeated to the victim that one brother had told the mother appellant sodomized him. This evidence was hearsay and double hearsay. Assuming OCGA § 24-3-16 permits evidence of statements made by children other than the victim of the crime alleged, this evidence did not fall within the exception granted at OCGA § 24-3-16, because the brothers were not available to testify. See *Rayburn v. State*, 194 Ga. App. 676 (391 SE2d 780), cert. den., 498 U. S. 969 (111 SC 434, 112 LE2d 417).

5. Moreover, the evidence as to appellant's alleged molestation of his sons was irrelevant to this case. If it might have been theoretically admissible as evidence of similar transactions, it was hearsay, for the boys did not testify and appellant was denied the right of confrontation. See *Eberhardt v. State*, 257 Ga. 420 (359 SE2d 908), cert. den.,

484 U. S. 1069 (198 SC 1036, 98 LE2d 999). The trial court erred in ruling that this hearsay evidence was admissible because the State gave notice of it to appellant. This evidence was extremely prejudicial and it is highly probable that it contributed to the verdict. *Johnson*, supra.

6. The court erred in allowing the State to elicit from appellant's niece irrelevant and prejudicial evidence as to sexual acts committed by appellant's sons, as follows: "Q. You remember back . . . in June of 1986 and December of 1985 . . . and let's see, it was two of the boys in the family. . . . They had done something to you sexually back then, hadn't they? A. I don't remember. Q. What did [the boys] do to you, did they ever touch you? A. No, I don't remember. Q. Come on, now. Your mind is not that blank, what had they done to you? [Objection to repetitiveness; overruled.] Q. They can't get you in trouble, come on and tell us what the two boys did to you that's documented? [Objection to statement about documentation; sustained.] Q. What did [the boys] do to you, back in December of 1985 and June of 1986? [Objection overruled.] Q. Tell us what they did, you need to answer, we're going to stay here until you answer; what did they do? A. I don't remember. . . . Q. You do remember what [the boys] did to you, don't you? A. No. Q. What? A. No. Q. You . . . don't remember what they did to you. Did you use to have dreams . . . about [appellant], did you have dreams about him at night time, scary dreams? A. No. Q. You didn't? A. No. Q. You didn't have dreams where you heard his voice and it really scared you? [Objection to relevance; overruled.] Q. You remember, that, Hon? A. No. Q. Do you remember anything? A. No."

This line of questioning, centered upon what appellant's sons allegedly did, was irrelevant and highly prejudicial. There is a high probability it affected the verdict, particularly in combination with the other irrelevant and prejudicial evidence. *Johnson*, supra. Its prejudicial nature was not cured by the witness' negative answers, for it was an attempt to introduce evidence by the questions themselves, and to challenge the witness' truthfulness based on her fear of harm from appellant's sons relative to their alleged abuse of her.

7. The trial court erred in allowing the State, over objection, to cross-examine appellant's son in detail as to sexual contact the boy had with his cousin, one of the victims in this case. This questioning was not relevant to appellant's guilt of the crimes charged, nor was it probative for impeachment, since the boy did not deny his sister had generally told him about things appellant had done to her. The questioning was highly prejudicial and probably did contribute to the verdict. *Johnson*, supra.

8. The evidence just referred to, where appellant's son testified his sister had told him about things appellant had done to her, was

not admissible under OCGA § 24-3-16, as it was entirely lacking in indicia of reliability. See *Rayburn*, supra.

9. It is impossible to determine the sufficiency of the evidence to sustain the verdict, in view of the substantial injection of irrelevant, prejudicial evidence in the case, by which the State attempted to show that sexual crimes were a frequent occurrence in appellant's family, thus to prove appellant's guilt by association. The denial of a new trial on grounds of irrelevant and prejudicial evidence infecting the verdict was error. We find it unnecessary to examine appellant's remaining enumerations of error, as we are certain the State and trial court will correct or avoid any such alleged errors or deficiencies in the new trial.

*Judgment reversed. Pope, C. J., concurs specially. Andrews, J., concurs in judgment only.*

Pope, Chief Judge, concurring specially.

While I agree defendant's conviction should be reversed I write separately because my analysis of this case differs from the majority opinion. I concur fully in Divisions 6 and 7 of the majority opinion.

1. Division 1 of this opinion highlights a problem with Court of Appeals Rule 11 (c). That rule provides: "All citations of cases, whenever and wherever they shall appear, shall be by name of the case as well as by volume and page of the Official Report (Harrison or Darby)." The rule does not instruct parties how they should cite to cases that do not yet appear in the Official Report. When a decision does not yet appear in the Official Report, parties should cite the decision as a slip opinion and include the case number and date of decision for easy reference by this court.

The State cited to the Fulton Daily Report for a decision issued in September 8, 1992. The State's brief was filed on February 22, 1993. The Georgia Advance Sheets containing the decision in question was issued on January 28, 1993. Thus, the Official Report was available for this particular decision approximately one month before the State's brief was filed.

2. As this court recently held in *Riddle v. State*, 208 Ga. App. 8 (430 SE2d 153) (1993), before any similar transaction evidence is admissible at trial a hearing must be held pursuant to Uniform Superior Court Rule 31.3 (B). As the requisite hearing was not conducted in this case, it is not necessary to specifically address the other bases for excluding similar transaction evidence discussed in Divisions 3, 4 and 5 of the majority opinion.

3. I do not agree with the majority's conclusion that the circumstances surrounding the alleged victim's statement to her brother about what defendant did to her do not provide sufficient indicia of reliability for the statement to be admitted under the Child Hearsay

Statute.

DECIDED JULY 8, 1993 —
RECONSIDERATION DENIED JULY 28, 1993 —

*Hatcher, Johnson & Meaney, James A. Meaney III*, for appellant.

*Ralph L. Van Pelt, Jr., District Attorney, Mary Jane Palumbo, Melodie B. Swartzbaugh, Assistant District Attorneys*, for appellee.