A96A1315. HARDY v. THE STATE.
(478 SE2d 423)

BLACKBURN, Judge.

Charles Hardy appeals his conviction on one count of theft by taking a motor vehicle, one count of criminal attempt to commit armed robbery, and two counts of armed robbery on the grounds that the trial court erred in admitting impermissible hearsay evidence and that the properly admitted evidence was insufficient to sustain a conviction.

This case concerns a string of three robberies that occurred in the early morning hours of April 1, 1994, at different apartment complexes located in Athens. In the first incident, shortly after Thomas W. Lynch parked his car near his apartment building, another car pulled up beside him. Two men exited the car. One of them was wielding a gun and demanded money. Lynch described the gunman as wearing a red baseball cap and dark, hooded top akin to a sweatshirt. The gunman took $15 in cash and a credit card from Lynch's wallet.

In the second incident, shortly after Carl Bartholomaus and his wife parked their car in the lot of an apartment complex, a large, four-door vehicle pulled into the same lot. Three men were in the car, and two got out. One was carrying a gun and came towards the Bartholomauses' vehicle. He banged on the window and commanded the couple to get out of the car. Bartholomaus was able to flee by placing the car in reverse. The gunman was described as wearing a dark, hooded jacket or sweatshirt. Bartholomaus subsequently identified Hardy as the gunman.

In the third incident, Vern Cresap was accosted by three men as he approached his apartment. The men were wearing red baseball caps and dark, hooded sweatshirts. One of the men was carrying a gun. They demanded money from Cresap and searched his pockets. Before leaving, they took Cresap's keys and identification.

Later the same morning, a Winder police officer responded to a burglary call at a local pawn shop. Upon arriving, he found a blue Oldsmobile Delta Ninety-Eight occupied by David Burgess parked in front of the pawn shop. A revolver was also found in the automobile with one round of live ammunition. Hardy and another man were subsequently found hiding in the pawn shop. The three individuals found at the pawn shop were wearing dark jackets with hoods and red baseball caps. A credit card imprinted with Thomas Lynch's

name was found in Hardy's pocket together with several rounds of ammunition that had been fired from a .357 revolver, the same type of gun found in the Oldsmobile. The Oldsmobile was being driven without a key. It had a broken steering column, a broken window, and a stolen tag. Subsequent investigation revealed that the car had been stolen from the Athens Auto Exchange either late in the evening of March 31, 1994, or early in the morning of April 1, 1994.

Upon learning the description of the suspects arrested in Winder, the Athens Police Department investigated to determine if the three men were involved in any of the aforementioned apartment robberies. Burgess confessed to an Athens police officer that he was present at each of the apartment robberies and implicated Hardy as also participating in these crimes. Burgess also indicated that Hardy had stolen the Oldsmobile that the trio had been traveling in at the time of their arrest. The officer from Athens wrote Burgess' statement in her own handwriting and paraphrased what she remembered Burgess as saying about each of the apartment complex crimes.

Burgess refused to testify at trial, and his unredacted custodial statement, as transcribed by the Athens police officer, was read to the jury over Hardy's hearsay objection.

1. Hardy argues that the trial court committed harmful error by admitting Burgess' statement. The State offers no argument in support of the admission of the hearsay statement and in fact states that "admission of the hearsay testimony was likely improper." While recognizing that the trial court erred in admitting the hearsay statement, the State argues that the error was harmless in light of the other evidence of Hardy's guilt.

We agree the admission of Burgess' statement was error, as Burgess' refusal to testify at trial deprived Hardy of his constitutional right to confront the witnesses against him. See *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968); *Short v. State*, 256 Ga. 165, 168 (5) (345 SE2d 340) (1986); *Crawford v. State*, 203 Ga. App. 215, 216 (2) (416 SE2d 820) (1992).

For Hardy's conviction to stand despite this evidentiary error, we must determine that the error was harmless beyond a reasonable doubt. *Short*, supra at 168-169, citing *Schneble v. Florida*, 405 U. S. 427 (92 SC 1056, 31 LE2d 340) (1972). Burgess' statement was, undoubtedly, a significant tool in the State's case. It linked Hardy to each crime and explained the crimes as part of a "spree." The evidence of Hardy's guilt was not otherwise overwhelming, and we cannot say "the minds of an average jury would not have found the State's case significantly less persuasive had the [confession] been excluded." *Crawford*, supra at 216 (2). This error demands reversal.

2. Having excluded the inadmissible confession, however, we

determine the evidence was otherwise sufficient to support each of Hardy's convictions. We review the remaining evidence under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), with all evidence construed and all reasonable inferences drawn most strongly in favor of the verdict.

As to the attempted armed robbery of the Bartholomauses, the record reveals that within a few hours of the crime, Hardy was located wearing clothing similar to the gunman, he had access to a gun, he was found in a group of three men as described by the victim, he was traveling in a car similar to that described by the victim, and, foremost, he was identified by the victim.[1]

As to the robbery of Lynch, at the time of his arrest, Hardy was carrying a credit card obtained in the robbery which had occurred only a few hours earlier. The recent unexplained possession of stolen goods may be sufficient to support a conviction when considered with other evidence. *Slater v. State*, 209 Ga. App. 723, 724 (434 SE2d 547) (1993). Other evidence showed that, shortly after the robbery, Hardy was found wearing clothing similar to Lynch's armed assailant.

With regard to the Cresap robbery, admissible evidence tying Hardy to the crime was his dress, the dress of his two companions, the similarity of the car near which Hardy was found to the car used by Cresap's robbers, and the string of similar robberies that occurred on April 1, 1994, for which Hardy stood accused. The circumstantial evidence showed the other crimes were committed using the same modus operandi as this one. Such evidence allowed the jury to infer that Hardy committed this crime and to exclude the possibility that anyone else committed it. See *Shaw v. State*, 211 Ga. App. 647, 648-649 (1) (440 SE2d 245) (1994).

With regard to Hardy's conviction for theft of the Oldsmobile, a jury may infer participation in a crime by one's conduct, companionship, demeanor and "all other circumstances connected with the act for which the accused is prosecuted." (Citations and punctuation omitted.) *Norris v. State*, 220 Ga. App. 87, 89 (469 SE2d 214) (1996). While Hardy was not found in the automobile, the circumstances would enable a jury to reasonably infer that Hardy participated in its theft. It manifested many of the characteristics of a stolen vehicle such that he should have known that it was stolen. The jury could infer that Hardy had been riding in the vehicle prior to his arrest, as

---

[1] While Hardy never demanded money or goods from the couple, the evidence permitted a jury to infer that Hardy had the intent to rob the Bartholomauses when he approached them with a gun in the early morning hours and demanded that they exit their car. See OCGA § 16-2-6. See also *Murray v. State*, 187 Ga. App. 747 (371 SE2d 272) (1988) (evidence sufficiently supported conviction for attempted burglary as the jury could infer defendant's intent to commit burglary by his conduct); *Lambert v. State*, 157 Ga. App. 275 (277 SE2d 66) (1981) (defendant's attempt to commit bank robbery could be inferred by his conduct).

the car was similar to the vehicle used in the attempted robbery of the Bartholomauses for which Hardy was implicated. See *Shaw, supra.* Finally, Hardy was found hiding from the police in close proximity to the vehicle.

Although this evidence was sufficient to support the convictions, the erroneous admission of the confession requires a new trial.

*Judgment reversed. Birdsong, P. J., concurs. Beasley, C. J., concurs specially.*

BEASLEY, Chief Judge, concurring specially.

I concur in the conclusion that the admission into evidence, over objection, of the cohort's inculpatory statement detailing the commission of the crimes at issue was error. As urged by Hardy at trial and in his appellate brief, it violated his Sixth Amendment right "to be confronted with the witnesses against him." I reach this conclusion because of the high standard which must be applied in determining whether this was reversible error. In applying the standard required by the United States Supreme Court, it is clear that the convictions on all of the counts must be reversed and a new trial afforded. It must proceed either without cohort Burgess' statement implicating Hardy as an active participant in the crimes, or with Burgess' testimony, which will be subject to cross-examination. The analysis is as follows.

"On appeal from a criminal conviction, the evidence is construed in the light most favorable to the verdict of guilt, and the presumption of innocence no longer applies. An appellate court does not weigh the evidence or judge the credibility of the witnesses but only determines whether the adjudication of guilt is supported by sufficient competent evidence. [Cit.]" *Belins v. State,* 210 Ga. App. 259 (1) (435 SE2d 675) (1993). A jury is permitted to draw reasonable inferences from facts it finds. OCGA § 24-4-9; *Farmer v. State,* 208 Ga. App. 198, 199 (1) (430 SE2d 397) (1993). On appeal, we must accept that "the fact finders have been convinced beyond a reasonable doubt." *Ridley v. State,* 236 Ga. 147, 149 (223 SE2d 131) (1976).

In applying these principles in this case, we must exclude the inadmissible evidence of the co-defendant's statement and test the evidence by an additional standard as well. Since a federal constitutional violation occurred, the applicable test is that required by the United States Supreme Court, not the Georgia Supreme Court. As recognized by the latter court in measuring the effect of a federal constitutional error, the standard found in *Chapman v. California,* 386 U. S. 18 (87 SC 824, 17 LE2d 705) (1967), must be applied. *Vaughn v. State,* 248 Ga. 127, 131 (2) (281 SE2d 594) (1981). The effect of non-constitutional errors was measured in *Johnson v. State,* 238 Ga. 59 (230 SE2d 869) (1976), the case in which the Georgia Supreme Court

established the "highly probable" test. That same test was applied to a nonconstitutional error in such cases as *Barrett v. State*, 263 Ga. 533, 535 (2) (436 SE2d 480) (1993); *Teague v. State*, 252 Ga. 534, 537 (2) (314 SE2d 910) (1984), and by this Court in *Cobb v. State*, 209 Ga. App. 708, 709 (434 SE2d 513) (1993).

"The correct inquiry is whether, assuming that the damaging potential of the cross-examination [was] fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 U. S. 673, 684 (106 SC 1431, 89 LE2d 674) (1986). In that case, the court held that Confrontation Clause errors are subject to the harmless error analysis of *Chapman*, supra.

The proper analysis is explained in *Chapman*, supra at 24: "There is little, if any, difference," the Supreme Court wrote, "between our statement in *Fahy v. Connecticut*[, 375 U. S. 85 (84 SC 229, 11 LE2d 171) (1963)] about 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction' and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. We, therefore, do no more than adhere to the meaning of our *Fahy* case when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." As reiterated in that case, we may not "treat as harmless those constitutional errors that 'affect substantial rights' of a party." Id. at 23.

In *Harrington v. California*, 395 U. S. 250 (89 SC 1726, 23 LE2d 284) (1969), which preceded *Van Arsdall*, the confessions of two co-defendants who did not testify were introduced. Even though there were limiting instructions that the jury was to consider each confession only against the confessor in the multi-defendant trial, the admission of the evidence constituted a Confrontation Clause violation of *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968). But the court concluded that under the particular circumstances of that case, including the nature of the confessions and of the other evidence, the lack of opportunity to cross-examine the two statement-making co-defendants constituted harmless error. This evidence was regarded as cumulative and the balance of the evidence as overwhelming, so that the violation "was harmless beyond a reasonable doubt." *Harrington*, supra at 254.

As instructed in *Harrington*, "[o]ur judgment must be based on our own reading of the record and on what seems to us to have been the probable impact of the . . . [confession] on the minds of an average jury." Id. I cannot conclude that the admission of Burgess' statement was " 'harmless' in terms of [its] effect on the factfinding pro-

cess at trial." *Van Arsdall*, supra at 681.

The factors which we must consider "include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted[ *Van Arsdall* involved impermissible limit on cross-examination of a witness], and, of course, the overall strength of the prosecution's case." *Van Arsdall*, supra at 684.

This was a circumstantial evidence case. None of the victims could positively identify Hardy as one of the robbers, although Bartholomaus said "I think" and "I believe" defendant was the gunman, based on his recollection at the trial twenty and one-half months after the incident, during which incident he saw one of the robbers pointing a gun at him through the window of his car. He said he focused on the gun, but that the gunman's "face was only about twelve to eighteen inches behind the gun."

Burgess' statement was of critical importance to the State's case, as is demonstrated by the vigorous effort expended by the State in achieving its admission. Burgess was called to testify but refused to do so, and the State wished to depend on the written statement taken while he was in custody instead. The statement, if Burgess was believed, left no doubt that Hardy was one of the three robbers. The quality of the statement was high, as it went into detail about the trio's activities that night, and its credibility was confirmed by the testimony of the victims with respect to their respective experiences and by the circumstances of their apprehension at the pawn shop. The evidence did not contradict the statement on any material points; rather, the statement tied it together and contributed missing points. It spoke directly to the issue of identity, which was the primary disputed issue in the case.

Burgess' statement was not cumulative; no one else testified who knew of the robbers' spree and knew who they were. Its importance in eliminating any doubt is evidenced by the jury's deliberations of only one hour before reaching a verdict, although the trial was held on two days.

Of significant importance in the analysis is "the overall strength of the prosecution's case." *Van Arsdall*, supra at 684. Particularly because of the distinctive clothing, the gun, the car, the proximity in time and location of the car theft and series of robberies and attempted robbery, the mode of operation, and the apprehension of the three perpetrators in the process of committing another crime involving the property of others, there is sufficient evidence to support the verdict under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), when the impermissible evi-

dence is removed. But it was not so "overwhelming" as in *Harrington* that the Sixth Amendment violation was harmless beyond a reasonable doubt.

The same result was reached in *Barksdale v. State*, 265 Ga. 9, 13 (2) (c) (453 SE2d 2) (1995). Compare *Byrd v. State*, 262 Ga. 426, 427 (2) (420 SE2d 748) (1992); *Wyatt v. State*, 222 Ga. App. 604 (475 SE2d 651) (1996).

DECIDED NOVEMBER 19, 1996.

*Jimmie E. Baggett, Jr.*, for appellant.

*Harry N. Gordon, District Attorney, Richard J. Weaver, Assistant District Attorney*, for appellee.