## A02A0435. MYERS v. THE STATE.
### (567 SE2d 742)

MIKELL, Judge.

A Gwinnett County jury convicted James Taber Myers and his co-defendant, William Riley Putnam, of burglary. The court sentenced Myers to seven years confinement and thirteen years probation. After his motion for new trial was denied, Myers filed the present appeal, arguing that the trial court erred in admitting hearsay testimony regarding the custodial confession of another co-defendant, Andrew Muehleman, in preventing the defense from calling Muehleman as an exculpatory witness, in admitting similar transaction evidence, and in denying Myers' motion for directed verdict. For reasons explained below, we reverse Myers' conviction and remand the case for a new trial.

On appeal from a criminal conviction, the evidence is viewed in the light most favorable to the verdict. *Paul v. State,* 231 Ga. App. 528 (499 SE2d 914) (1998). We do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Williams v. State,* 233 Ga. App. 217 (1) (504 SE2d 53) (1998).

So viewed, the evidence shows that Charlene Conley Smith and her husband[1] returned to their apartment at approximately 8:30 p.m.

---

[16] (Citation omitted.) Id. at 326 (2).

[1] Justin Smith was her boyfriend at the time of the events in question, but the couple later married.

on May 2, 1999, to find that the door had been forcibly opened. Smith testified that it appeared to have been "kicked in." The couple soon discovered that a shotgun had been taken from their bedroom, but that no other valuables had been removed from the apartment. The shotgun was kept in a bag which was also missing. Smith testified that after calling the police, she immediately checked the caller identification service on her telephone and saw that a call had been received from Karona Man's residence at 8:00 p.m. that night. Smith knew defendants Myers and Putnam through mutual friends, and she recalled that Myers resided at Man's home. Smith testified that Myers had visited her apartment approximately one week before the burglary occurred and that he had admired the shotgun. Smith called the number on her "caller I.D." unit and reached Myers. When she asked him about the burglary, he denied breaking into her apartment and explained that he had been at a Mexican restaurant that night.

Man testified that Myers and several other men and women in their early twenties were living at her home at the time in question. According to Man's testimony, Muehleman, her former boyfriend, lived in the house as well. Man did not testify at all about the burglary or the whereabouts of Myers and Muehleman on that night.

Investigator Clemons of the Gwinnett County Police Department began investigating the burglary approximately one week after it occurred. Clemons focused his investigation on the individuals residing in Man's home. Clemons testified that during a search of Man's home, he discovered a shotgun bag matching the description of the one taken from Smith's apartment in Muehleman's bedroom. Muehleman was subsequently arrested. Clemons interrogated Muehleman and obtained a statement implicating Myers, Muehleman, and Putnam. Based on Muehleman's confession, the police arrested Myers and Putnam.

Muehleman entered a guilty plea prior to the trial of Myers and Putnam. When the state called him as a witness at trial, Muehleman asserted his Fifth Amendment right against self-incrimination in response to certain questions. The state moved to have Muehleman declared unavailable so that his custodial statement to Investigator Clemons would be admissible under the necessity exception to the hearsay rule. After defense counsel had the opportunity to voir dire Muehleman outside the presence of the jury, the court ruled that the witness was unavailable. Next, the court ruled that Investigator Clemons could testify about Muehleman's statement after the state made a proffer of what the testimony would include. The state presented evidence outside the presence of the jury that after the burglary, Myers, Muehleman, and Putnam went to DeKalb County to confront a drug dealer and that the stolen shotgun accidentally

discharged in their vehicle. The court appeared to find that Muehleman could be implicated for the crime of being in possession of stolen property in DeKalb County and was therefore unavailable to testify at all based on his Fifth Amendment privilege against self-incrimination. The court expressly found that Clemons' testimony was reliable.

Clemons then testified for the jury that Muehleman confessed that he went to Smith's apartment with Myers and Putnam to obtain a weapon that Myers had seen there; that before they left Man's home, Myers called the Smith residence to confirm that no one was home, and then the three men drove the short distance to the apartment; that Myers went to Smith's door first; that Myers tried to force entry twice but was unsuccessful; that Myers became afraid and asked to be taken to a nearby apartment complex in case Smith returned home, so Muehleman and Putnam took him there and then returned to Smith's apartment; and that Putnam actually forced entry into the apartment and retrieved the gun while Muehleman stood watch outside. A videotape of Clemons' interview with Muehleman was played for the jury later in the course of the trial.

The state also introduced evidence of a similar transaction that occurred in July 1995, when Myers purchased a firearm that had been stolen from a Gwinnett County police officer's vehicle and subsequently entered a guilty plea to theft by receiving. At the close of the state's evidence, Myers moved for a directed verdict, and the court denied the motion.

Myers' counsel attempted to recall Muehleman as a witness. Although it had declared Muehleman unavailable earlier in the trial, at this time the court instructed the witness that he would be required to testify about his involvement in the burglary, but that he would not have to testify about the events that took place afterward in DeKalb County. The court further explained that Muehleman could not assert his Fifth Amendment privilege against self-incrimination to charges he had already pled guilty to. Next, the court appointed a lawyer to advise Muehleman. After conferring with his new client, counsel announced that Muehleman would testify only about the burglary to which he pled guilty and for which Myers and Putnam were charged. However, contrary to its earlier instruction to the witness, the court ruled that because Muehleman had asserted his Fifth Amendment privilege in response to certain questions, he could not testify to anything, including his involvement in the burglary.

In order to present statements made by Muehleman during his plea colloquy that might be exculpatory for Myers, defense counsel had to call as a witness the assistant district attorney who represented the state when Muehleman entered his plea. After a tran-

script of the proceeding was admitted as evidence, assistant district attorney Thomas Ned Davis, Jr. read from that transcript and testified as follows:

A: Questions was [sic], who wanted the shotgun, did Taber [Myers] want the shotgun.
Q: And Mr. Muehleman's answer?
A: No it was Riley [Putnam] that wanted it; Riley had gotten, I don't know what the exact thing was, he seemed like he was upset about something and he was exacting revenge on somebody and he asked me did I want to come along and I said sure, why not.
Q: And your next question?
A: Tell me what happened when you all got over there.
Q: His answer?
A: Well, we were on the way and me and Mr. Putnam were the ones who entered the house.
Q: Next question?
A: All right, where was Taber [Myers]?
Q: His answer?
A: He wasn't even there, he was in the apartment complex down the road. He asked if he could be dropped off at his friend's house.

Davis further testified that Muehleman told the court that Myers may not have known that Muehleman and Putnam were going back to rob Smith's apartment after they took him to the apartment complex down the street.

Myers testified that it was Putnam who wanted a gun for protection because he had some problems with a drug dealer; that Myers planned to ask Smith's husband, Justin, if he could borrow the shotgun; that it was Putnam's idea to steal the gun; that Myers remained in the car while the other two men attempted to kick the apartment door in; that he became "jittery" and asked the others to abandon the plan to steal the gun; that the three of them drove to a nearby apartment complex where he exited the car and told the others that he did not want to be involved in the burglary; that Muehleman and Putnam returned to pick him up fifteen minutes later; and that the two men were in possession of the Smiths' gun when they returned to Man's home.

1. First, Myers contends that the trial court erred in allowing Investigator Clemons to testify regarding Muehleman's custodial confession. The court allowed the testimony under the necessity exception to the hearsay rule after finding that Muehleman was

unavailable because he asserted his Fifth Amendment privilege against self-incrimination to certain questions about the incident in DeKalb County.

OCGA § 24-3-52 provides that "[t]he confession of one joint offender or conspirator made after the enterprise is ended shall be admissible only against himself." The Supreme Court has expressly recognized that OCGA § 24-3-52 was designed to protect a defendant from the hearsay confession of a co-defendant who does not testify at trial. *Livingston v. State*, 268 Ga. 205, 211 (4) (486 SE2d 845) (1997).

In *Livingston v. State*, supra, the Supreme Court held that a trial court's admission of a co-conspirator's confession under the necessity exception to the hearsay rule was reversible error. There, the trial court allowed police officers to testify about custodial statements made by two co-indictees[2] who had already been convicted and sentenced and who asserted their Fifth Amendment privilege against self-incrimination. Id. at 206 (1). The Supreme Court recognized that the necessity exception to the hearsay rule "authorizes the admission of hearsay when the declarant is unavailable and there exists a circumstantial guaranty of the trustworthiness of the offered evidence." (Citation and punctuation omitted.) Id. at 211 (4). The Court then held that the necessity exception could not be used to allow the out-of-court confession of a co-conspirator to be used against another co-conspirator. Id. See also *Price v. State*, 239 Ga. 439, 441-442 (238 SE2d 24) (1977) (police officer's testimony regarding a co-suspect's confession implicating the defendant was inadmissible).

This Court has rendered similar decisions. In *Crawford v. State*, 203 Ga. App. 215, 216 (2) (416 SE2d 820) (1992), we held that the admission of the taped confession of a co-indictee who refused to testify at the defendant's trial violated OCGA § 24-3-52 and the defendant's Sixth Amendment right to cross-examine and confront witnesses against him. Similarly, in *Hardy v. State*, 223 Ga. App. 597, 598 (1) (478 SE2d 423) (1996), we reversed a conviction because the trial court admitted the custodial statement of a co-defendant who refused to testify at trial.

Based on the authority summarized above, we conclude that the trial court in the case sub judice erred in admitting the hearsay testimony of Investigator Clemons regarding Muehleman's custodial confession. Furthermore, the error was not harmless beyond a reasonable doubt. See *Price*, supra at 443; *Alexander v. State*, 236 Ga. App. 142, 146 (1) (511 SE2d 249) (1999). Because there was not overwhelming evidence in the record, other than Muehleman's confes-

---

[2] The state prosecuted the three defendants separately.

sion, to connect Myers to the burglary, the erroneous admission of the hearsay testimony requires a new trial. Compare *Crawford*, supra.

2. Next, Myers contends that the court erred in preventing the defense from calling Muehleman as an exculpatory witness. Myers argues that because Muehleman asserted his privilege against self-incrimination only in response to questions involving collateral events in DeKalb County and not in connection with the burglary of the Smiths' apartment, the trial court erred in determining that he was unavailable as a witness. See OCGA § 24-3-1 (b).

The law is clear that "if it appears that a witness intends to claim the privilege as to essentially all questions, the court may, in its discretion, refuse to allow him to take the stand." (Citations and punctuation omitted.) *King v. State*, 202 Ga. App. 817, 819 (2) (415 SE2d 684) (1992). But in this case, the witness did not intend to claim the privilege as to essentially all questions; rather, he refused to testify only about events that occurred in DeKalb County after the burglary. As we noted above in our summary of the facts, when the state called Muehleman as a witness, he asserted his Fifth Amendment privilege against self-incrimination in response to a question regarding his reason for stealing the gun. When questioned by defense counsel, he indicated that he would testify about the burglary to which he had already pled guilty and for which Myers and Putnam were being tried, but not about the collateral events in DeKalb County. Despite Muehleman's response, the court ruled that Muehleman was unavailable to testify at all. Additionally, when the defense attempted to recall Muehleman as a witness, the court went so far as to appoint counsel to advise him of his right against self-incrimination. After conferring with Muehleman, counsel reported the following to the court:

> I have previously discussed the Constitutional rights with Mr. Muehleman about testifying. He has indicated to me that he will testify honestly and truthfully about the charges for which he has already entered a plea, and for which he has already received a sentence. . . . So he is willing to state everything he knows about [the burglary].

In spite of Muehleman's clear willingness to testify about the crime for which Myers and Putnam were charged, the court ruled that he was unavailable.

The issue is whether this ruling constituted an abuse of discretion. In a 1969 case where the state sought to admit the testimony of

a witness who invoked her privilege against self-incrimination during cross-examination, the Supreme Court recognized that

> a distinction must be drawn between cases in which the assertion of the privilege merely precludes inquiry into collateral matters which bear only on the credibility of the witness and those cases in which the assertion of the privilege prevents inquiry into matters about which the witness testified on direct examination.

(Punctuation omitted.) *Smith v. State*, 225 Ga. 328, 333 (7) (168 SE2d 587) (1969). That case is obviously distinguishable from the case sub judice, as here the witness was not allowed to give any testimony at all, and the precluded testimony may have been exculpatory; however, the Court's reasoning is instructive. At a minimum, it implies that a witness may assert the privilege regarding "purely collateral matters" and still testify about events directly relevant to the guilt of the accused. See also *Buford v. State*, 162 Ga. App. 498, 501 (8) (291 SE2d 256) (1982).

However, in the absence of more conclusive authority, we cannot conclude that the court's ruling amounted to an abuse of discretion. Based on our decision in Division 1, Myers will be given a new trial. It is likely that if he is called as a witness, Muehleman again will assert his Fifth Amendment privilege regarding the events following the burglary. When the trial court exercises its discretion to determine the availability of Muehleman as a witness, we strongly encourage it to consider whether his refusal to testify is limited to purely collateral matters and rule accordingly.

3. Myers also assigns error to the trial court's admission of similar transaction evidence of Myers' purchase of a firearm from an individual who had stolen it from a police car. Myers argues that the court erred in failing to conduct a hearing and in ruling that the evidence was admissible. We agree.

Before admitting similar transaction evidence, the court must hold a hearing where the state must make three affirmative showings about the independent offense it seeks to introduce. *Gardner v. State*, 273 Ga. 809, 810 (2) (546 SE2d 490) (2001); Uniform Superior Court Rule 31.3 (B).

> In order for similar transaction evidence to be admissible, the State must show (1) that it seeks to introduce evidence of the independent offense or act, not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility, (2) that there is sufficient

evidence to establish that the accused committed the independent offense or act, and (3) that there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter.

*Frady v. State*, 245 Ga. App. 832, 834-835 (4) (538 SE2d 893) (2000), citing *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

In this case, the trial court heard the argument of counsel regarding the admissibility of the similar transaction evidence; however, it did not conduct a USCR 31.3 (B) hearing before determining that the evidence was admissible, in violation of *Williams v. State*, supra, 261 Ga. at 640. In that case, the Supreme Court stated:

As we held in *Stephens v. State*, 261 Ga. 467, 468-469 (6) (405 SE2d 483) (1991), in its presentation to the trier of fact, the state must do more than merely introduce a certified copy of a conviction and/or indictment into evidence. The state must present the trier of fact with evidence establishing both that the accused committed an independent offense or act and that the connection and/or similarity between that offense or act and the crime charged is such that proof that the accused committed the former tends to prove that the accused also committed the latter.

Id. at 642 (2) (c).

Furthermore, there is insufficient similarity or connection between the theft by receiving offense and the crime charged; therefore, evidence of that independent crime was inadmissible. *Weems v. State*, 204 Ga. App. 352, 355 (419 SE2d 346) (1992) (prior burglary of single family home was not sufficiently similar to apartment burglary three years later). Proof that Myers bought a gun, which he knew was stolen, would not prove that he forced entry into the Smiths' apartment and stole their shotgun. See *Wilcox v. State*, 174 Ga. App. 21 (1) (329 SE2d 244) (1985).

Thus, the trial court erred in failing to conduct a hearing and in concluding that the independent offense was sufficiently similar. We cannot conclude that the error was harmless, as there was little evidence connecting Myers to the burglary. Accordingly, Myers' conviction must be reversed on this ground as well.

4. Based on Divisions 1 and 3, Myers' conviction will be vacated, and he will be given a new trial. Therefore, we need not reach Myers' last enumerated error, in which he argues that the trial court erred in denying his motion for directed verdict. It is possible that if

presented with sufficient admissible evidence, the next jury would be authorized to find that Myers committed the crime charged.

*Judgment reversed and case remanded. Andrews, P. J., and Phipps, J., concur.*

DECIDED JUNE 26, 2002.

*Page A. Pate*, for appellant.

*Daniel J. Porter, District Attorney, David K. Keeton, Assistant District Attorney*, for appellee.