**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**June 1, 2012**

# In the Court of Appeals of Georgia

A12A0425. WHITMAN v. THE STATE.                                    AD-017C

ADAMS, Judge.

Ricky Lane Whitman appeals following his conviction on one count of misdemeanor theft by receiving. As his sole enumeration of error, Whitman asserts that the trial court erred in allowing the State to admit similar transaction evidence of a similar pending theft charge. He asserts that the admission of this evidence deprived him of his constitutional right to testify at the trial in this case by endangering his right to remain silent with regard to the similar transaction. Finding no error, we affirm.

Viewed in the light most favorable to the verdict, the evidence at trial showed that on or about 3:00 p. m. on September 23, 2010, Steve Mullen returned home to discover that his lawn mower and tiller were missing from his front yard. Noticing a

rusty wheelbarrow in the lot next door, Mullen suspected that someone collecting scrap had taken his property to sell at PSC Metals, a scrap yard approximately one mile down the street. Mullen went directly to PSC to inquire about the missing equipment. There, employees located Mullen's lawn mower and tiller in a pile of scrap. Based upon interviews with PSC employees, PSC paperwork signed by Whitman, and still surveillance photographs showing scrap being unloaded from Whitman's blue station wagon, police arrested Whitman.

The State also introduced, over objection, similar transaction evidence, in which the victim identified Whitman as the man he caught on May 10, 2011 at a nearby recycling center attempting to sell property stolen from him the same day. The State proffered this evidence for the purpose of showing intent, bent of mind, identification and course of conduct, and the trial court admitted the evidence for the limited purposes of showing intent and course of conduct.

The defense presented evidence from Whitman's fiancée, who testified that the materials taken to PSC on September 23, 2010 were from a yard Whitman and she were cleaning and did not include Mullen's lawnmower and tiller. Whitman chose not to testify in his own defense.

Under *Williams v. State,* 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991), before admitting similar transaction evidence,

> the trial court must determine that the State has affirmatively shown that: (1) the State seeks to admit evidence of the independent offenses or acts for an appropriate purpose; (2) there is sufficient evidence that the accused committed the independent offenses or acts; and (3) there is sufficient connection or similarity between the independent offenses or acts and the crimes charged so that proof of the former tends to prove the latter.

(Citations omitted.) *Harvey v. State,* 284 Ga. 8, 8–9 (2) (660 SE2d 528) (2008). Our Supreme Court recently approved the following statement setting out two separate standards for appellate courts to apply in reviewing a trial court's admission of similar transaction evidence:

> When reviewing the trial court's factual findings regarding whether the state satisfied the three-prong test mandated by *Williams*, we apply the "clearly erroneous" standard. The decision to admit similar transaction evidence which satisfies the three-prong test is within the trial court's discretion and will not be disturbed absent an abuse of that discretion.[1]

---

[1] The Supreme Court concluded that the "'abuse of discretion' standard is different from and not quite as deferential as the 'clearly erroneous' [or 'any evidence'] test." *Reed v. State*, __ Ga. __ (3) (Case No. S12A0443, decided April 24, 2012).

3

(Citations and punctuation omitted.) *Reed v. State*, __ Ga. __ (3) (Case No. S12A0443, decided April 24, 2012).

Whitman does not contend that the May 10, 2011 transaction failed to meet the *Williams* three-prong test. He concedes that the transaction is similar to the one in this case, and he does not argue that it was introduced for an improper purpose or that the evidence was insufficient to show that he committed that offense. And this Court has consistently held that similar transactions which occur after the charge for which a defendant is being tried, such as the transaction in this case, are admissible so long as the State demonstrates that the transaction satisfies the *Williams* test. *Whitehead v. State,* 287 Ga. 242, 249 (3) (695 SE2d 255) (2010) (same "test applies whether the similar transaction occurred before or, as here, after the charged crimes"); *Ayiteyifio v. State*, 308 Ga. App. 286, 290 (707 SE2d 186) (2011); *Scott v. State,* 219 Ga. App. 906, 908 (3) (467 SE2d 348) (1996). Moreover, "[i]t is well settled that there need not be a criminal charge or conviction relating to a similar offense for it to be admissible." (Citation and punctuation omitted.) *Hill v. State*, 298 Ga. App. 677, 680 (2) (680 SE2d 702) (2009). See also *Robinson v. State*, 312 Ga. App. 736, 752 (5) (719 SE2d 601) (2011) (concluding that details of prior arrest were admissible as similar transaction evidence where such involved circumstances similar to those

4

giving rise to defendant's theft charges); *Woods v. State,* 275 Ga. App. 340, 342 (1) (a) (620 SE2d 609) (2005) (same).

Rather, Whitman argues that the trial court erred in admitting the evidence because he contends that it presented him with an untenable choice: he could either assert his Sixth Amendment right[2] to testify in his own defense in this case, thus endangering his Fifth Amendment right to remain silent in connection with the pending charge in the similar transaction, or he could waive his right to testify in this case in order to preserve his Fifth Amendment rights in the other matter. In other words, Whitman is challenging, "the improper impact that the admission of a similar transaction from a *pending* case had on his Fifth and Sixth Amendment Rights at a jury trial under the U. S. Constitution." (Emphasis supplied.) Accordingly, under *Reed*, we apply an abuse of discretion standard to Whitman's argument.[3]

---

[2] "The right to testify on one's own behalf at a criminal trial [actually] has sources in several provisions of the Constitution" including the Sixth Amendment. *Rock v. Arkansas*, 483 U. S. 44, 51-52 (107 SC 2704, 97 LE2d 37) (1987).

[3] The State asserts that Whitman's argument is speculative because he did not state his reason for not testifying on the record. But this factor does not prevent our review of Whitman's argument because the trial court ruled on the issue below. See *New Jersey v. Portash*, 440 U. S. 450, 453-455 (II) (A) (99 SC 1292, 59 LE2d 501) (1979) (court considered whether trial court erred in holding State could use defendant's grand jury testimony pursuant to immunity agreement to impeach him at a later trial even though defendant did not testify and thus arguably suffered no harm

It is true that "[a] defendant in a criminal case who voluntarily testifies in his own behalf, waives completely his privilege under the Fifth Amendment." (Citation and punctuation omitted.) *Carter v. State,* 161 Ga. App. 734, 736 (3) (288 SE2d 749) (1982).

> [W]hen a defendant voluntarily takes the stand in his own behalf and testifies as to his guilt or innocence as to a particular offense, his waiver is not partial; having once cast aside the cloak of immunity, he may not resume it at will, whenever cross-examination may be inconvenient or embarrassing. His voluntary offer of testimony upon any fact is a waiver as to all other relevant facts because of the necessary connection between all.

(Footnote omitted.) *Braswell v. State*, 245 Ga. App. 602, 605 (6) (a) (538 SE2d 492) (2000). See also *Hubbard v. State,* 173 Ga. App. 127, 129 (7) (325 SE2d 799) (1984). Clearly, therefore, if Whitman had chosen to testify in his own defense, he would have waived all Fifth Amendment rights with regard to the crime alleged in this case. But even if a defendant's decision to testify also subjects him to potential cross-examination regarding properly admitted similar

---

from trial court's ruling). Here, the court ruled, after characterizing Whitman's constitutional argument as "interesting," by stating that he would not "go with" the argument and instead allowing the State to introduce the similar transaction evidence.

transaction evidence,[4] it does not follow that Whitman's testimony regarding the crime alleged in this case would have resulted in the waiver of his Fifth Amendment rights with regard to the pending charges alleged in the similar transaction.[5]

In Georgia, "[a] party, though introduced as a witness in his own behalf, may, upon cross-examination as to matters not voluntarily testified about on his direct examination, decline to give testimony which would tend to criminate him.

---

[4] See *Johnson v. State*, 270 Ga. 234, 237 (3) (507 SE2d 737) (1998) ("in Georgia, the scope of cross-examination is not generally limited to what was covered on direct.") (Citation omitted.).

[5] "This privilege against self-incrimination extends not only to those answers that would in themselves support a conviction, but also to answers creating a 'real and appreciable' danger of establishing a link in the chain of evidence needed to prosecute." (Citations omitted.) *In re Tidwell*, 279 Ga. App. 734, 743 (5) (632 SE2d 690) (2006). When a witness invokes the privilege,

the trial court [first] must determine if the answers *could* incriminate the witness. If so, then the decision whether it *might* must be left to the witness. On the other hand, where the trial court determines that the answers *could not* incriminate the witness, he must testify (or be subject to the court's sanction). It is for the court to decide if the danger of incrimination is "real and appreciable."

(Citations and punctuation omitted; emphasis in original.) Id.

7

. . ." (Citations omitted.) *Bishop v. Bishop,* 157 Ga. 408 (1) (121 SE 305) (1924).

See also Ga. Const. of 1983, Art. I, Sec. I, Par. XVI; OCGA § 24-9-27 (a).[6] A

witness, therefore, may assert a privilege against self-incrimination with respect

to matters that "were wholly collateral to and unrelated to her testimony in chief,

and w[ere] with respect to separate transactions, in no way shown by her

testimony to be connected with the crime with which the defendant here was

---

[6] We note that our Supreme Court has limited the exercise of the privilege set out in OCGA § 24-9-27 in cases where the testimony tends only to bring infamy, disgrace or public contempt upon a witness or his family, as follows:

> In *Brooks v. State*, 233 Ga. 524 (2) (212 SE2d 355) (1975), this court construed the foregoing testimonial privilege, in accordance with the great weight of authority, to require the witness to answer questions tending to bring infamy, disgrace or public contempt upon himself or his family, if the proposed evidence is material to the issues in the case; it is only where the proposed answer has no effect on the case except to impair the witness' credibility that the witness may fall back on the privilege.

*Brown v. State*, 242 Ga. 536, 538 (3) (250 SE2d 438) (1978). But this limitation does not extend to Whitman's constitutional right to remain silent. And although the General Assembly has repealed OCGA § 24-9-27 effective January 1, 2013, a modified version of the statute, which retains language prohibiting forced self-incrimination, will be in effect as of that date and codified as OCGA § 24-5-505 under the new evidence code. Ga. L. 2011, Act 52, § 2.

8

charged." *Smith v. State,* 225 Ga. 328, 331 (7) (168 SE2d 587) (1969) (holding that trial court need not strike entirety of prosecution witness's testimony where witness asserted privilege as to collateral matter), cert. denied, *Smith v. Georgia,* 396 U. S. 1045 (90 SC 695, 24 LE2d 689), rehearing denied, 397 U. S. 970 (90 SC 1000, 25 LE2d 264) (1970).

The right against self-incrimination is retained as to collateral matters, therefore, so long as the defendant does not somehow waive that right in his direct examination. Thus, Whitman's waiver of his Fifth Amendment rights as to the charge in this case would not have automatically resulted in a waiver of his right to remain silent in connection with the similar transaction. Although that evidence was deemed admissible for the limited purpose of establishing intent and course of conduct, the two incidents involved two distinct transactions, with different victims, different property, and different scrap yards, and the events occurred almost eight months apart. As the judge explained to the jury in his limiting instruction regarding the similar transaction, Whitman was on trial only for the offense in this case; he was not on trial "for any other related or connected – or other acts." If Whitman had confined his testimony to the facts in this case, his Fifth Amendment rights as to the similar transaction should not have been

9

impacted. Cf. *Myers v. State*, 256 Ga. App. 135, 141 (2) (567 SE2d 742) (2002) (Georgia case law indicates that "a witness may assert the privilege [against self-incrimination] regarding 'purely collateral matters' and still testify about events directly relevant to the guilt of the accused."); *Buford v. State,* 162 Ga. App. 498, 501 (8) (291 SE2d 256) (1982) (where defendant admitted participation in crime and identified witness as a participant, defendant suffered no prejudice from witness's refusal on Fifth Amendment grounds to testify regarding collateral matter of the other participants's names).

Of course, if he had chosen to testify, Whitman would have run the risk of inadvertently opening the door to questioning about his May 2011 arrest, but that risk would have existed even if the trial court had excluded the similar transaction evidence. See, e. g., *Green v. State*, 298 Ga. App. 17, 25-26 (7) (679 SE2d 348) (2009) (defendant's prior arrest record admissible where defense opened door on the same specific subject); *Parker v. State,* 169 Ga. App. 557 (1) (313 SE2d 751) (1984) (state was entitled to question defendant about his prior arrests in order to

impeach defendant's testimony that "[he had] never been in a situation ... dealing with the law").[7]

Although Whitman may have faced a difficult choice in deciding whether to testify, it is well settled that

> [t]he criminal process, like the rest of the legal system, is replete with situations requiring the making of difficult judgments as to which course to follow. Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose. . . . [T]he threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved.

(Citations and punctuation omitted.) *Chaffin v. Stynchcombe*, 412 U. S. 17, 32 (93 SC 1977, 36 LE2d 714) (1973).[8] A defendant's decision to testify on his own behalf necessarily involves an assessment of many factors, including the potential

---

[7] Moreover, we note that Whitman's decision not to testify did not deprive him of his ability to present evidence in support of his defense as his fiancée testified that the property Whitman and she brought to PSC that day came from somewhere other than the victim's house and did not include the stolen property.

[8] Compare *Simmons v. United States,* 390 U. S. 377, 391-94 (88 SC 967, 19 LE2d 1247) (1968) (court may not compel a defendant to give up his right to remain silent by testifying at a Fourth Amendment right proceeding).

risk of self-incrimination. See *Brooks v. Tennessee*, 406 U. S. 605, 607-608 (92 SC 1891, 32 LE2d 358) (1972). But this difficult tactical decision does not necessarily "transmute a matter of trial tactics into an issue of constitutional significance." *United States v. Masters*, 840 F.2d 587, 590-591 (8th Cir. 1988) (holding that accepted practice allowing trial judge to delay ruling on motion in limine until after defendant testified did not violate defendant's Sixth Amendment right to testify in his own defense).

Whitman cites no authority to support his argument that adverse evidence must be excluded because its admission might impact a defendant's decision to testify. To the contrary, even if Whitman was "forced to choose between asserting a defense based upon his own testimony or remaining silent, [that is] a choice that is inherent in any defendant's decision whether to testify or not, and that does not violate a defendant's constitutional rights." *United States v. Wright*, 88 Fed. Appx. 30, 31 (5th Cir. 2004); *Williams v. Florida,* 399 U. S. 78, 83-84 (90 SC 1893, 26 LE2d 446) (1970). See also *United States v. Hung Thien Ly,* 646 F.3d 1307, 1314-1315 (11th Cir. 2011) ("the right to testify is the right to choose between the competing rights of testifying and remaining silent."); *State v. Perkins*, 271 Conn. 218, 243-244 (B) (856 A2d 917) (2004) ("a defendant must always choose

12

between standing on his constitutional right to remain silent and taking the stand in presenting his defense"); *People v. Caro*, 46 Cal.3d 1035, 1056 (761 P2d 680) (1988), overruled on another ground, *People v. Whitt*, 51 Cal.3d 620, 657, n. 29 (798 P2d 849) (1990) (choice between Fifth Amendment rights as to similar transactions and Sixth Amendment right to testify "is permissible under the federal Constitution").

Accordingly, we find no abuse of discretion in the trial court's admission of the similar transaction evidence.

*Judgment affirmed. Barnes, P. J., and McFadden, J., concur.*