### A10A1416. AMAECHI v. THE STATE.

(702 SE2d 680)

MCMURRAY, Senior Appellate Judge.

Following a jury trial, Collins Chinonye Amaechi was convicted of two counts of financial transaction card theft[1] and obstruction of a law enforcement officer.[2] On appeal from the denial of his motion

---

[1] OCGA § 16-9-31 (a) (1).

[2] OCGA § 16-10-24 (a).

for new trial, Amaechi challenges the sufficiency of the evidence as to the first count of financial transaction card theft, the trial court's denial of his motion for a directed verdict, and the trial court's failure to give his requested jury charge on mere presence. We discern no error and affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict and determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crime charged. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Middlebrooks v. State*, 277 Ga. App. 551 (627 SE2d 154) (2006).

So viewed, the trial evidence showed that on March 15, 2007, a customer service representative of Discover Card, a credit card company, received a call from an individual requesting the issuance of a new credit card on the account of Daniel E. Runyan, a cardholder. Although Runyan was a resident of Wisconsin, the individual requested that the credit card be sent to an address in Gwinnett County, Georgia. The individual pretended to be Runyan, had access to Runyan's personal information, and provided accurate responses to the security questions posed in accordance with Discover Card's security procedures. Subsequent contact with Runyan, however, revealed that Runyan had not requested or authorized the issuance of the new credit card on his account.

Investigators with Discover Card, the United States Postal Inspector, and the Gwinnett County Police Department launched an investigation upon being alerted to the fraudulent action on Runyan's credit card account. The investigation revealed that the residence located at the Gwinnett County address was vacant.

On March 20, 2007, the investigators and law enforcement officers conducted a sting operation, involving a controlled delivery of the credit card to the Gwinnett County address. An invalid credit card in Runyan's name was issued for use in the controlled delivery. Undercover officers conducted surveillance in the surrounding area while the postal inspector made the delivery. When the postal inspector, dressed in a courier uniform, arrived at the residence with the parcel containing the credit card, Amaechi was sitting inside his vehicle parked in the driveway. Amaechi greeted the postal inspector and inquired about the parcel. The postal inspector advised Amaechi that the parcel was for Runyan and asked him whether Runyan lived at the residence. Amaechi falsely responded that Runyan did live there, but that he was not present at that time. Amaechi agreed to sign for the parcel and accepted the delivery.

After Amaechi took possession of the parcel, the officers rushed in and surrounded the residence. The officers identified themselves

as police and wore raid vests and jackets that displayed large, clearly visible "police" inscriptions. The officers also displayed their badges. When an officer approached Amaechi to arrest him, Amaechi fled across the lawn of the residence, ignoring the officer's repeated commands to stop his vehicle. Despite Amaechi's attempt to flee from the scene, he was apprehended when the officers blocked his departure.

Following the arrest, Amaechi's vehicle was searched. During the search, the officers recovered the parcel containing Runyan's Discover credit card. The officers also recovered an envelope containing a Chase Visa credit card bearing the name of David S. Parreco as the cardholder. The envelope with Parreco's credit card contained handwritten notes providing Parreco's personal identification information. Parreco's credit card had been sent to the same Gwinnett County address pursuant to a fraudulent request received by the Chase Bank call center on March 15, 2007. After being issued, Parreco's credit card was used in an unauthorized transaction.

The search of Amaechi's vehicle further resulted in the officers' recovery of a fake North Carolina driver's license issued in a different name; notes with personal identification information and account numbers belonging to others; corporate documents issued in the names of Parreco and others that, according to a financial crimes detective, could be used in fraudulent credit transactions; and several cell phones.

Amaechi was charged with two counts of financial transaction card theft and obstruction of a law enforcement officer. At trial, the state presented testimony from Runyan and Parreco, the cardholders. Both victims testified that they did not live in Georgia, had not requested new credit cards in March 2007, were unfamiliar with Amaechi, and did not give Amaechi permission to have their respective credit cards.

Following the presentation of the above evidence at trial, the jury found Amaechi guilty of the crimes charged.

1. Amaechi contends that the evidence was insufficient to support his conviction of the first count of financial transaction card theft, which was based upon his unauthorized possession of Runyan's credit card.[3] We disagree.

"A person commits the offense of financial transaction card theft when . . . [h]e takes, obtains, or withholds a financial transaction card from the person, possession, custody, or control of another

---

[3] Amaechi does not challenge the sufficiency of the evidence supporting his conviction on the second count of financial transaction card theft, which was based upon his unauthorized possession of Parreco's credit card. He also does not challenge his obstruction conviction.

without the cardholder's consent[.]" OCGA § 16-9-31 (a) (1). Count 1 of the accusation charged that Amaechi had committed this offense in that he had "unlawfully and knowingly obtain[ed,] without the consent of the cardholder, . . . a Discover card . . . having been issued to Daniel E. Runyan as cardholder and from whose possession said card was obtained[.]" The evidence set forth above established that Amaechi had obtained unauthorized possession of Runyan's credit card during the controlled delivery conducted by the investigators. The circumstantial evidence further established that Amaechi had acted with guilty knowledge and intent in doing so.

"Intent is a question for the jury. The jury may find criminal intent by considering the accused's words, conduct, demeanor, motive and all other circumstances connected with the act for which he is being prosecuted. See OCGA § 16-2-6." (Citations and punctuation omitted.) *Terrell v. State*, 275 Ga. App. 501, 503 (621 SE2d 515) (2005). See also *Stovall v. State*, 167 Ga. App. 69 (306 SE2d 14) (1983) ("guilty knowledge may be inferred where the circumstances are such as would excite suspicion in the mind of an ordinarily prudent man") (citation omitted). In this case, although Amaechi had not opened the parcel to reveal the presence of Runyan's credit card prior to his arrest, there was other circumstantial evidence from which an inference could be drawn that Amaechi had knowledge that he was accepting the credit card without authority and as part of an unlawful scheme. Significantly, the evidence showed that Amaechi had falsely informed the postal inspector that Runyan lived at the residence and had accepted the delivery of the parcel addressed to Runyan without authority. When Amaechi was confronted by the officers, he fled. Moreover, Amaechi had maintained unauthorized possession of a different credit card belonging to Parreco, along with additional items that could be used to engage in fraudulent credit transactions. Based upon these combined circumstances of Amaechi's deceit, flight, and unauthorized possession of another individual's credit card and items to perpetrate fraudulent financial transactions, the jury was authorized to find that Amaechi had acted with guilty knowledge and intent to commit the credit card theft offense. See *Brown v. State*, 277 Ga. App. 514, 515 (1) (a) (627 SE2d 136) (2006); *Rogers v. State*, 259 Ga. App. 516, 517-518 (1) (578 SE2d 169) (2003); *Harris v. State*, 166 Ga. App. 202, 203 (1) (303 SE2d 534) (1983). See also *Tauch v. State*, 305 Ga. App. 643, 645 (1) (700 SE2d 645) (2010) ("the jury was authorized to consider [the defendant's] flight from the scene and police as circumstantial evidence of his guilt"); *Slack v. State*, 159 Ga. App. 185, 189-190 (3) (283 SE2d 64) (1981) (defendant's flight presents circumstantial evidence of consciousness of guilt). Amaechi's conviction was authorized. See *Brown*, 277 Ga. App. at 515 (1) (a); *Rogers*, 259 Ga. App. at 517-518 (1); *Harris*, 166 Ga. App. at 203 (1).

2. Amaechi further contends that the trial court erred in denying his motion for a directed verdict on the first count of financial transaction card theft. Again, we discern no error.

"Our standard of review for the denial of a motion for a directed verdict of acquittal is the same as our standard for reviewing the sufficiency of the evidence to support a conviction." *Maskivish v. State*, 276 Ga. App. 701, 702 (1) (624 SE2d 160) (2005). Where the evidence establishes the essential elements of the offense charged, a directed verdict of acquittal is unauthorized. See *Simpson v. State*, 213 Ga. App. 143, 144 (1) (444 SE2d 115) (1994); *Baxter v. State*, 160 Ga. App. 181, 183-184 (1) (286 SE2d 460) (1981).

(a) In his motion for a directed verdict, Amaechi argued that the state failed to prove that he committed the offense in the manner specified in the accusation. "If the [accusation] sets out the offense as done in a particular way, the proof must show it so, or there will be a variance." (Citations and punctuation omitted.) *Palmer v. State*, 286 Ga. App. 751, 753 (2) (650 SE2d 255) (2007). The accusation specifically charged that Amaechi had committed the offense by obtaining the credit card "from [Runyan's] possession." The trial evidence established that Runyan never had actual possession of the credit card after its issuance. Nevertheless,

[t]he law recognizes two kinds of possession, actual possession and constructive possession. A person who knowingly has direct physical control over a thing at a given time is in actual possession of it. A person who, though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing is then in constructive possession of it.

(Citation and punctuation omitted.) *Simpson*, 213 Ga. App. at 144-145 (1). See also OCGA § 44-1-7 ("Personalty is deemed to be in the possession of a party when that party's right to the property is accompanied by immediate actual or constructive possession."); *DeFoor v. State*, 233 Ga. 190, 192 (210 SE2d 707) (1974) (the allegation that the defendant was in possession of the money referred to his custody and control over it). Because Runyan was the cardholder on the account, he had the authority to exercise dominion and control over the credit card that had been issued in his name. The evidence therefore reflected that Runyan was in constructive possession of his credit card, which was sufficient to establish the allegation set forth in the accusation.

(b) In support of his claim of error, Amaechi also argues that the state failed to prove that Runyan's credit card was a financial transaction card, as defined by OCGA § 16-9-30 (5), since it was

invalid and could never be used in a financial transaction. This argument, however, was not raised in Amaechi's motion for a directed verdict. Consequently, the issue has been waived for purposes of appeal. See *Palmer*, 286 Ga. App. at 753-754 (2). Regardless, to the extent that Amaechi's claim presents a challenge to the sufficiency of the evidence, it is without merit. The trial evidence established that the card was a credit card as described under the statute. Moreover, the credit card was introduced into evidence at trial and, thus, was identifiable by the jury as a card included in the statute. See OCGA § 16-9-30 (5); *Brown*, 277 Ga. App. at 515-516 (1) (b). And significantly, OCGA § 16-9-31 (a) (1) does not distinguish between valid, revoked, or unrevoked cards in proscribing the offense. See *Thomas v. State*, 176 Ga. App. 771, 775-776 (3) (c) (337 SE2d 344) (1985). See, e.g., *Sword v. State*, 232 Ga. App. 497 (502 SE2d 334) (1998) (ruling that no showing of actual use of the card is necessary to prove financial transaction card theft under OCGA § 16-9-31 (a) (1)). Accordingly, the state was not required to show that the card was used or could have been used in order to establish Amaechi's commission of the offense. See *Thomas*, 176 Ga. App. at 775-776 (3) (c).

3. Lastly, Amaechi asserts that the trial court erred in failing to give his requested jury charge on mere presence. "It is, of course, true that mere proof of the accused's presence at the scene of the crime, without any evidence to show further participation in the commission of the crime, is insufficient to authorize a conviction." (Citations and punctuation omitted.) *McCulley v. State*, 273 Ga. 40, 43 (3) (a) (537 SE2d 340) (2000). Amaechi, however, was not entitled to this instruction because the evidence showed that he was an active participant in the charged offense. See *Simmons v. State*, 282 Ga. 183, 188 (14) (646 SE2d 55) (2007); *McCulley*, 273 Ga. at 43 (3) (a). See also *Rozier v. State*, 259 Ga. 399, 400 (4) (383 SE2d 113) (1989) ("[Jury] instructions[,] even though abstractly correct[,] should not be given unless authorized by the evidence.") (citation and punctuation omitted).

*Judgment affirmed. Barnes, P. J., and Senior Appellate Judge G. Alan Blackburn concur.*

DECIDED OCTOBER 5, 2010.

*Clark & Towne, Jessica R. Towne*, for appellant.
*Daniel J. Porter, District Attorney, Jennifer M. Taylor, Assistant District Attorney*, for appellee.