**THIRD DIVISION
DILLARD, P. J.,
GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 10, 2020**

# In the Court of Appeals of Georgia

A19A2464. BERNIER v. THE STATE.

GOBEIL, Judge.

A jury found Michael Bernier guilty of one count each of child molestation and aggravated child molestation. Bernier appeals from his judgment of conviction and the denial of his motion for a new trial, asserting (1) that the evidence was insufficient to support the convictions. Bernier also asserts trial court error, based on the: (2) denial of a motion for mistrial; (3) jury charge as to conflicts in testimony; and (4) finding that he waived his right to be present at bench conferences throughout the trial, or acquiesced to counsel's waiver. Finally, Bernier asserts that (5) he received ineffective assistance of counsel, based on defense counsel's: (a) failure to advise him of and preserve his right to be present at bench conferences; (b) failure to seek the suppression of the results of a search of his cell phone; (c) failure to object to the

introduction of State's Exhibit 5, which was a video depicting a purported act of child molestation; (d) failure to object to the introduction of State's Exhibit 6, which was a video depicting a woman taking a shower; (e) eliciting testimony from witnesses that bolstered the victim's testimony; and (f) failure to request a pre-sentence investigation and a downward departure from the mandatory minimum sentence. For the reasons set forth below, we affirm.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.

*Williams v. State*, 333 Ga. App. 879, 879 (777 SE2d 711) (2015) (citation and punctuation omitted).

Thus viewed in the light most favorable to the verdict, the record shows that in the early morning hours of February 1, 2014,[1] at approximately 2:30 a.m., the victim, H. S., awoke to find her stepfather, Bernier, in her bed. H. S.'s mother worked the night shift and was not home at the time. H. S. felt Bernier kneeling on the

---

[1] On February 1, 2014, H. S. was 13 years old.

mattress, and she believed he had his cell phone out, as she "heard buttons" and "saw flashes."

Bernier pulled down H. S.'s shorts and touched the area under her shorts with "his hands and his face." He then pulled up her shorts and tried to turn her over. At that point, she sat up in bed, and Bernier "shot up off the bed[.]" H. S. believed that Bernier "looked startled" but appeared to know what was going on. Bernier then began to talk to H. S. about household chores, telling her he had already taken the dogs outside. Bernier asked H. S. if he could sleep with her, and he cradled her in her bed. H. S. eventually got out of bed, and she and Bernier went downstairs to play video games, while Bernier "acted like nothing happened." After Bernier fell asleep on the couch, she used his cell phone to call her mother, D. B., to tell her what had happened. D. B. told H. S. that she was on her way home and would call the police.

The police were waiting outside the house when D. B. arrived home. D. B. drove H. S. to the police station, and later to a hospital. H. S. was examined by a nurse, and DNA recovered from H. S.'s shorts and anus matched DNA from Bernier. Although vaginal swabs taken from H. S. contained male DNA, there was not sufficient DNA present to match it to any specific person.

3

Two days later, H. S. gave a forensic interview, where she recounted the incident. The interviewer testified at trial, and the video of H. S.'s interview was played for the jury. In her recorded interview, H. S. explained in detail that Bernier touched her vagina and anus with his mouth, tongue, and hands. She also explained that Bernier had never done anything like this to her in the past, and agreed with the interviewer that the incident came out of the blue.

After H. S. gave her forensic interview, Sergeant Todd Shepard contacted Bernier for an interview. In an interview conducted on February 2, 2014, Bernier claimed that he had taken the prescription sleep drug Ambien on the night in question, and did not remember parts of the evening, including any sexual contact with H. S. However, he gave detailed accounts of other parts of the late evening of January 31, 2014, and the early morning hours of February 1, 2014, after having taken the Ambien. For example, he recounted H. S. coming downstairs to ask for a blanket sometime in the 11 o'clock hour, and he brought a blanket into her bedroom, and spoke with her for a time in her bedroom. He specifically remembered her asking him about a chiropractor's appointment he had the day before, and he touched H. S.'s back to show her how the chiropractor had touched his back. He also remembered H.

S. coming downstairs again later to say that she could not sleep, and playing video games with her.

While at the police station, Bernier consented to a search of his cell phone. A video file found on Bernier's cell phone, which had been deleted but was recovered by a digital forensic analysis, showed that there was an additional incident of child molestation that occurred before H. S. woke up, at approximately 1 a.m. that same morning. When Bernier was shown screen shots from this video, he did not deny that it was him molesting H. S. in the video, but he asked the officer to take away the screen shots so he would not have to look at them.

Based on this evidence, Bernier was indicted on one count of child molestation, for touching H. S.'s vagina and buttocks, and one count of aggravated child molestation, for committing an act of sodomy on H. S., by putting his mouth on her vagina.

Bernier proceeded to trial. During jury selection, there were several bench conferences at which Bernier was not personally present. During these bench conferences, two potential jurors were excused by the court, after expressing their inability to serve on the jury because of their personal history with children or child

5

molestation. Another potential juror explained that he was currently being prosecuted by the District Attorney's office, but he was not excused as a juror.

Both the prosecutor and defense counsel asked potential jurors if any of them or a family member had been prescribed Ambien, and several jurors responded affirmatively. The attorneys agreed to speak to those jurors separately at the bench about their experiences with the drug, and the court conducted a lengthy bench conference with the jurors, allowing both attorneys to question them. The court did not excuse any jurors based on their answers to these questions.

At trial, the State called several witnesses, including H. S. and D. B., both of whom testified that, before H. S. went to bed on the evening of the incident, at approximately 11 p.m., Bernier "made" her drink a glass of orange juice before bed. H. S. testified that, when Bernier gave her the orange juice, he said it was "a fear factor thing," and was daring her to drink the full glass. H. S. explained that she had not given this information to the police or at her forensic interview because she did not think it was relevant, but she mentioned it later because "every detail, it matters." On cross-examination, she testified that it was an unusual thing for Bernier to do, so it "raised an antenna" in her mind.

After H. S. and D. B.'s testimony, defense counsel moved for a mistrial based on their testimony about Bernier giving H. S. orange juice, asserting that it "came completely as a surprise" to the defense. The prosecutor explained that he had only just heard about the orange juice detail the week prior from D. B., and H.S. had reviewed her recorded interview and written a note about the orange juice the day before trial, which the prosecutor immediately provided to defense counsel. The trial court found that the lateness in giving the information to the defense did not change the defense's case in any meaningful way, and denied the motion for mistrial. Further, to the extent that the new information might affect Bernier's decision to testify in his own defense, the court noted that it would give the defense additional time if necessary for him to make his decision.

The State also called Lieutenant Darin Meadows as a witness, who was qualified as an expert in computer and digital forensic analysis. He received Bernier's cell phone for examination two days after the incident with H. S. and conducted a digital forensic analysis. He found a video file that had been recorded on February 1, 2014, at approximately 1 a.m., which showed a man's hand touching the exposed vaginal and buttocks areas of a woman or girl. Meadows did not testify or speculate about the identities of the people shown in the video. The video file had been deleted

before Meadows received the phone, but he was able to recover it. This video was admitted without objection as State's Exhibit 5 and was played for the jury.

Meadows testified about a second video file that was found in Bernier's possession, which depicted a woman taking a shower. Earlier in the trial, D. B. had testified that Bernier had video taped her without her permission on several occasions. She had made him delete videos in the past, but she was recently shown a video by the police that depicted her naked in the shower. A thumb drive purportedly containing this video and others of D. B. in the shower was admitted into evidence as State's Exhibit 6[2] without objection, but nothing from the thumb drive was shown to the jury.

Finally, Meadows testified that he was able to recover the phone's internet history, which had been manually deleted. The recovered files showed that someone had used the phone's web browser to search for Ambien-related information, namely: "how to test for ambien"; "temporary insanity for ambien"; and "ambien hallucinations[.]" The phone's browser had also accessed an article titled: "the ambien defense criminal law unclear on how to treat the ambien zombie phenomenon[.]" Meadows could not state when the searches were conducted, but he

[2] State's Exhibit 6 does not appear in the appellate record.

could tell that they were deleted in the late evening on February 1, 2014, approximately 20 hours after the incident.

During the defense's case at trial, Bernier put forward the affirmative defense of involuntary intoxication, claiming that he was unaware of what he was doing at the time of the incident because he was under the influence of the drug Ambien. Bernier presented testimony from an expert witness in the field of pharmacology, James O'Donnell. O'Donnell testified that many patients have reported performing activities while under the effects of Ambien, without being conscious of even being awake at the time. He stated that Ambien and other drugs in its class can also have an amnesiac effect, with the patient not remembering what has happened while on the drug. Another reported phenomenon with Ambien was so-called "sexsomnia," which involves increased sexual aggression and participation in atypical sexual activities without having a memory of the event. On cross-examination, O'Donnell clarified that sexsomnia with Ambien was extremely rare.

O'Donnell had reviewed the evidence in Bernier's case, and interviewed and examined Bernier. He opined that Bernier's explanation that he had no memory of the incident with H. S. was consistent with a typical case of Ambien-related side effects.

9

Bernier testified in his own defense that he had recently had trouble sleeping while his wife was working overnight. On the day before the incident, he went to an urgent care center and got a short-term prescription for Ambien. At approximately 10:30 p.m. the evening before the incident, he took 10 milligrams of Ambien. Bernier recalled some details from that night into the early morning hours, including going into H. S.'s room to bring her a blanket. As in his police interview, he recounted that she asked him about his chiropractor's appointment, and he touched her back to show her where the chiropractor had touched him.[3] He also remembered playing video games with H. S. in the middle of the night. The next thing he remembered was the police coming into his home.

Bernier testified that he had no memory of sexually assaulting H. S. and that such a thing never would have happened had he not been under the influence of Ambien. He acknowledged that there was evidence to support that he did do those things, and he did not dispute that H. S. was telling the truth in her testimony. He

---

[3] H. S. was asked about this interaction during her direct testimony, and she stated that it did not happen – she had not asked for a blanket or asked about the chiropractor, and Bernier had not come into her room until he woke her up at 2:30 a.m. during the molestation event.

stated that he cooperated with the police because he wanted to help find out what happened and make it right.

The jury found Bernier guilty of both counts in the indictment. Shortly after the verdict, the trial court moved on to sentencing. At the sentencing hearing, Bernier's brother testified in support of Bernier, and defense counsel spoke on Bernier's behalf as well. The State asked for a 30-year sentence of confinement, followed by life on probation, and the defense asked for a 25-year sentence of confinement. On the aggravated child molestation count, the court sentenced Bernier to 25 years to serve, plus life on probation, which was the mandatory minimum sentence allowed by law. The court sentenced Bernier to 19 years to serve, plus one year on probation, for the child molestation count, to run concurrently with his other sentence.

Bernier filed a motion for a new trial. As amended, his motion for a new trial asserted all of the claims of error now raised on appeal. At the hearing, trial counsel testified that Bernier was very involved in his own defense. They had agreed to pursue the "Ambien defense" of involuntary intoxication, and so some of his decisions regarding the State's evidence were based on this defense strategy. Rather than contesting the State's evidence, trial counsel focused on securing the expert witness to explain the potential effects of Ambien.

The trial court denied the motion for new trial, upholding the jury's verdict. Specifically, the trial court concluded that many of counsel's decisions were tactical, based on the agreed-upon defense that relied on Bernier's cooperation with the investigation. Bernier now appeals from the judgment of conviction and the denial of his motion for new trial.

1. On appeal, Bernier contends generally that the evidence was insufficient to support the convictions, and the trial court should have granted his motion for directed verdict of acquittal. Specifically, Bernier argues that he proved the necessary elements of the affirmative defense of involuntary intoxication, and the State did not disprove his defense beyond a reasonable doubt.

"When evaluating the sufficiency of evidence, the proper standard for review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *Dean v. State*, 273 Ga. 806, 806 (1) (546 SE2d 499) (2001), citing *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). It is for the jury to assess the credibility of witnesses, resolve any conflicts in the evidence, and determine the facts. *Butler v. State*, 273 Ga. 380, 382 (1) (541 SE2d 653) (2001). "Our standard of review for the denial of a motion for a directed verdict of acquittal is the same as our standard for reviewing the sufficiency of the evidence to support

12

a conviction. Where the evidence establishes the essential elements of the offense charged, a directed verdict of acquittal is unauthorized." *Amaechi v. State*, 306 Ga. App. 333, 337 (2) (702 SE2d 680) (2010) (citation and punctuation omitted).

Georgia's involuntary intoxication statute provides:

A person shall not be found guilty of a crime when, at the time of the act, omission, or negligence constituting the crime, the person, because of involuntary intoxication, did not have sufficient mental capacity to distinguish between right and wrong in relation to such act.

OCGA § 16-3-4 (a). Intoxication may be considered involuntary when it is caused by the consumption of a substance through excusable ignorance. OCGA § 16-3-4 (b) (1).[4] A defendant asserting involuntary intoxication "bears the burden of showing by a preponderance of the evidence, that he was not mentally responsible at the time of the alleged crime." *Stewart v. State*, 291 Ga. App. 846, 847 (663 SE2d 278) (2008) (citation and punctuation omitted). "If the defendant meets that burden, the State must present sufficient evidence to show beyond a reasonable doubt that the defendant was not involuntarily intoxicated. The ultimate resolution of the issue is for the finder of fact." Id. (citations omitted).

---

[4] The parties do not dispute the voluntariness of Bernier's intoxication and thus we do not reach this issue.

13

Pretermitting whether Bernier met his burden of proving the elements of his defense by a preponderance of the evidence, the State also presented sufficient evidence to disprove it beyond a reasonable doubt. Undisputed testimony from the victim established that Bernier molested H. S. at 2:30 a.m. on February 1, 2014, and video evidence depicted another act of molestation earlier at approximately 1 a.m. Regarding Bernier's memory of the event, his interview with police and his testimony established that he remembered much of the night before and the early morning hours of the incident, including going into H. S.'s bedroom in the middle of the night and touching her back while talking to her, and later playing video games with her. Further, although Bernier acted as though he had not seen the video of himself molesting H. S., digital forensic analysis showed that someone had accessed the video file in order to delete it. This evidence was sufficient to allow a jury to convict Bernier of the child molestation offenses despite his claim of involuntary intoxication. See *Stewart*, 291 Ga. App. at 847-848 (affirming conviction of defendant claiming he was involuntarily injected with drugs, where victim's statement that she did not drug defendant was sufficient evidence to support the jury's verdict); *Burchfield v. State*, 219 Ga. App. 40, 41-42 (1) (464 SE2d 27) (1995) (even where another witness admitted to placing drugs in defendant's coffee, evidence was

14

sufficient to convict because jury questions remained as to whether defendant's intoxication was involuntary or whether he had the capacity to distinguish right from wrong at the time of the offense).

This case ultimately turned on whether the jury believed Bernier's explanation for the events of that night. The jury was free to conclude that Bernier was not telling the truth about not having control over himself during the incident. They heard him testify at the trial and were able to assess his credibility firsthand. See *Jones v. State*, 352 Ga. App. 380, 389 (2) (b) (834 SE2d 881) (2019) (when a criminal defendant testifies, his credibility is central to the outcome of the trial); *Adams v. State*, 187 Ga. App. 340, 344 (1) (370 SE2d 197) (1988) (stating that "in every case the jury is the arbiter of credibility including as to the defendant's explanation" of the event, and "the jury is the body which resolves conflicting evidence, and where the jury has done so, the appellate court cannot merely substitute its judgment for that of the jury"). In light of these facts and our standard of review, we cannot conclude that the evidence did not support the verdict.

2. Bernier next contends that the trial court erred in denying his motion for mistrial after the State's witnesses testified that Bernier gave H. S. orange juice on the evening before the incident, and Bernier was not given this information until the day

before trial. Specifically, Bernier asserts that the court's ruling — that any harm caused by the testimony could be refuted by Bernier testifying that he did not tamper with the orange juice — infringed on his Fifth Amendment right to remain silent. Bernier's argument is belied by the record.

We review the denial of a motion for mistrial under an abuse of discretion standard. *Davis v. State*, 263 Ga. App. 230, 233 (2) (587 SE2d 398) (2003). Although the trial court denied Bernier's motion for mistrial, it did not do so solely because any harm could be remedied by Bernier's testifying in response. The primary reason the court denied the motion for a mistrial was because it did not believe that the lateness of receiving the information about the orange juice affected the defense's position or strategy at trial. Moreover, although the State attempted to imply that Bernier had tampered with H. S.'s orange juice, there was no other evidence to support the implication. Thus, the court reasoned that the defense could argue that the State had not proved anything concretely, no matter what the State was implying.

The trial court did suggest that, if Bernier chose to testify, he could deny the implication. But the court also stated that if Bernier chose not to testify, defense counsel could make the argument in other ways. Bernier would have had to decide whether to testify regardless of when his attorney received the information. When

16

defense counsel suggested that the issue may affect Bernier's decision to testify, the trial court stated that it would give the defense additional time for Bernier to make his decision. In any event, Bernier cites no authority to support his argument that the trial court's ruling implicated his Fifth Amendment rights, or that the orange juice testimony should have been excluded as it might have impacted his decision to testify. To the contrary, even if Bernier was "forced to choose between asserting a defense based upon his own testimony or remaining silent, that is a choice that is inherent in any defendant's decision whether to testify[,]" and "does not violate a defendant's constitutional rights." *Whitman v. State*, 316 Ga. App. 655, 660 (729 SE2d 409) (2012) (citation and punctuation omitted). Accordingly, we find no reversible error based on the trial court's denial of Bernier's request for a mistrial.

3. Next, Bernier asserts that the trial court erred in failing to grant his request to charge the jury on "conflicts in testimony" because such a charge "was essential for the jury to navigate through the many conflicts that arose in testimony throughout the trial." We disagree.

We review a trial court's refusal to give a requested jury charge for an abuse of discretion. *Salazar-Balderas v. State*, 343 Ga. App. 201, 203 (1) (806 SE2d 644)

17

(2017). At trial, Bernier requested the following jury charge for conflicts in testimony:

> When you consider the evidence in this case, if you find a conflict, you should settle this conflict, if you can, without believing that any witness made a false statement. If you cannot do so, then you should believe that witness or those witnesses whom you think are best entitled to relief. You must determine what testimony you will believe and what testimony you will not believe.

The trial court stated that it would not give a "conflicts in testimony" charge, as such charge had been eliminated by *Noggle v. State*, 256 Ga. 383 (349 SE2d 175) (1986). Bernier argues that the charge he requested was not the same as the one eliminated by *Noggle*, and the trial court's reliance on *Noggle* was in error.

Bernier is correct that his charge differs in substance from the one discussed in *Noggle*, 256 Ga. at 385 (4), which recommended eliminating so-called "presumption-of-truthfulness" charges that state "when witnesses appear and testify in a case such as this, they are presumed to speak the truth unless they are impeached in some manner provided by law." In *Hopkins v. State*, 309 Ga. App. 298, 300-301 (2) (709 SE2d 873) (2011), the defendant requested a jury charge very similar to the

18

one requested by Bernier.[5] We first noted that Hopkins's requested charge was not a presumption-of-truthfulness charge. Id. at 301 (2), citing *Mallory v. State*, 271 Ga. 150, 151 (2) (517 SE2d 780) (1999).

However, we then found no error in the trial court's refusal to give Hopkins's requested charge, as "[i]t is error to refuse to give a charge only where the request is a correct statement of law that is pertinent and material to an issue in the case and not substantially covered by the charge actually given." *Hopkins*, 309 Ga. App. at 301 (2) (citation and punctuation omitted). We determined that the court's other charges, including on the credibility of witnesses, "adequately covered the principle of law set out in Hopkins's requested charge." Id.

---

[5] The charge at issue in *Hopkins* stated:

> If upon consideration of the evidence in this case, you find that there is a conflict in the testimony of the witnesses or a conflict between a witness or witnesses, it is your duty to settle this conflict, if you can, without believing that any witness made a false statement. If you cannot do this, then it becomes your duty to believe that witness or those witnesses you think best entitled to belief.

*Hopkins*, 309 Ga. App. at 300 (2).

19

Here, the trial court charged the jury on credibility of witnesses and conflicting statements by witnesses. Such instructions adequately explained to the jury how to determine the credibility of witnesses and how to resolve conflicts in the testimony. Accordingly, we find no reversible error on this issue.

4. Bernier asserts that the trial court erred in finding that he had waived or acquiesced to counsel's waiver of his right to be present at bench conferences during jury selection.[6] Specifically, he asserts that these bench conferences during jury selection were not made up of merely legal argument. Instead, they included substantive testimony from prospective jurors regarding their competency to hear his case, and the trial court made rulings on some of these jurors during the bench conferences. He argues that these were critical stages of his criminal proceeding, and he had a constitutional right to be present and counsel failed to inform him of that right. And, as he was not aware of his right, he could not have waived it.

A criminal defendant has the right to be present at bench conferences at which the "composition of the jury" is discussed. *Burney v. State*, 299 Ga. 813, 819 (3) (b) (792 SE2d 354) (2016); *Ramirez v. State*, 345 Ga. App. 611, 615-616 (2) (814 SE2d

---

[6] Although Bernier also challenges his exclusion from bench conferences during the trial, he does not cite to any examples of conference during the trial from which he was excluded.

751) (2018) ("proceedings at which the jury composition is selected or changed are critical stages at which the defendant is entitled to be present") (citation and punctuation omitted). In Georgia, "absent a valid waiver by the defendant," a violation of this right is "presumed to be prejudicial." *Peterson v. State*, 284 Ga. 275, 279 (663 SE2d 164) (2008). However, a defendant may waive this right in different ways, including by acquiescing to counsel's waiver of the right. *Heywood v. State*, 292 Ga. 771, 775 (3) (743 SE2d 12) (2013).

Here, because potential jurors were excused by the trial court during two of the bench conferences at Bernier's trial, and potential jurors answered questions about their experiences with Ambien at another, Bernier had a right to be present. *Ramirez*, 345 Ga. App. at 615-616 (2); *Pennie v. State*, 271 Ga. 419, 421 (2) (520 SE2d 448) (1999) ("the trial judge should have no communications with a juror about the case, except as to matters relating to the comfort and convenience of the jury" when defendant is not present). In its ruling on the motion for new trial on this issue, the trial court found that Bernier acquiesced to his counsel participating in bench conferences without his presence. We agree.

At the motion for new trial hearing, regarding Bernier's presence at bench conferences, trial counsel testified that he was aware that defendants have a right to

21

be present, and although he could not remember specifically informing Bernier of this right, he assumed that he would have done so. Trial counsel did not recall Bernier affirmatively waiving this right, but Bernier never asked to be included in the bench conferences. In counsel's experience, it was rare for a client to join him at a bench conference, and he relayed any important information from the bench conferences to Bernier.

"Acquiescence, which is a tacit consent to acts or conditions, may occur when counsel makes no objection and a defendant remains silent after he or she is made aware of the proceedings occurring in his or her absence." *Williams v. State*, 300 Ga. 161, 166 (3) (794 SE2d 127) (2016) (citation and punctuation omitted). Here, where Bernier was present before, during, and after all of these bench conferences took place, saw jurors being questioned and on two occasions excused, and voiced no objection, we conclude that he acquiesced to counsel's waiver of his presence. See *Heywood*, 292 Ga. at 775 (3) (defendant's "failure to voice any objection to his absence from this bench conference, either directly or through counsel, constituted acquiescence in his counsel's waiver of his right to be present"); *Williams*, 300 Ga. at 166 (3) (defendant, who was present in the courtroom during the juror's inquiry before the bench conference, during the bench conference, and immediately after

22

when the court announced that a juror was being excused, her "remaining silent in the face" of the juror's excusal after a bench conference was acquiescence); *Kennedy v. State*, 274 Ga. 396, 397 (3) (554 SE2d 178) (2001) (defendant acquiesced where "all of the bench conferences in question took place while [defendant] was in the courtroom, and she voiced no objection to them").

Although Bernier contends that he was unaware of his right to be present, defense counsel testified that he assumed that he made Bernier aware of this right, and he had a practice of not having his clients join him at bench conferences, but informing them of their contents when important. By finding that Bernier acquiesced to counsel's waiver, the trial court implicitly found that he was aware of his right. *Heywood*, 292 Ga. at 775 (3) (acquiescence "implies a knowledge of those things which are acquiesced in") (citation and punctuation omitted). Based on counsel's testimony at the motion for new trial hearing, we conclude that the trial court's finding on this issue was not clearly erroneous. *Russell v. State*, 236 Ga. App. 645, 650 (2) (512 SE2d 913) (1999) (trial courts's findings of fact must be affirmed unless clearly erroneous). Accordingly, we find no reversible error on this issue.

5. In related claims of error, Bernier also contends that he received ineffective assistance of trial counsel, and the trial court erred in denying his motion for new

23

trial. To prevail on any of these claims, Bernier must prove both that his lawyer's performance was deficient and that he suffered prejudice as a result of this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). If Bernier cannot meet his burden of proving either prong of the *Strickland* test, then we need not examine the other prong. *Causey v. State*, 319 Ga. App. 841, 842 (738 SE2d 672) (2013). "The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous." *Johnson v. State*, 214 Ga. App. 77, 78 (1) (447 SE2d 74) (1994) (citations and punctuation omitted).

With respect to the first prong of the *Strickland* test, deficient performance, Bernier must show that his attorney performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in light of prevailing professional norms. *Strickland*, 466 U. S. at 687-688 (III) (A).To demonstrate that he suffered prejudice as a result of his attorney's performance, Bernier must prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U. S. at 694 (III) (B). "This burden, though not impossible to carry, is a heavy one." *Arnold v. State*,

292 Ga. 268, 270 (2) (737 SE2d 98) (2013), citing *Kimmelman v. Morrison*, 477 U. S. 365, 382 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986).

(a) Bernier asserts that counsel was ineffective for failing to advise him of his right to be present at bench conferences, and waiving that right without consulting him. Based on our discussion in Division 4, supra, we affirm the trial court's finding that counsel informed Bernier of his right to be present at bench conferences. Moreover, because counsel relayed all of the information from the bench conferences to Bernier, there is not a reasonable probability that his being present at the bench conferences would have changed the outcome of his trial. See *Ramirez*, 345 Ga. App. at 621-622 (3) (c) (defendant's speculation over how his being present at bench conferences could have changed the result of his trial did not show ineffective assistance of counsel).

(b) Bernier asserts that trial counsel was ineffective for failing to seek the suppression of the results of the forensic analysis conducted on his cell phone. Although Bernier admits that he consented to having law enforcement view his phone and laptop, he argues that he did not consent to a forensic analysis of these devices, which led to the discovery of deleted files, including the video that was admitted as State's Exhibit 5, which was extremely incriminating.

25

At the motion for new trial hearing, counsel testified that he was aware that Bernier had consented to the police searching his cell phone. When asked if he was aware of case law concerning the police exceeding the scope of consent to search cell phones, counsel responded that he was generally aware of those kinds of cases, but "what we were doing for Mr. Bernier, [that] really wasn't a focus."

Here, counsel's decision not to seek the suppression of the results of the search of Bernier's phone and laptop did not constitute deficient performance for at least two reasons. First, counsel was under the impression that Bernier consented to the search, and Bernier does not allege that he raised this issue with counsel, or asked him to file a suppression motion. Thus, counsel had no reason to believe that a motion to suppress would have been successful. Based on what counsel knew at the time he formulated his opinion about filing a motion to suppress, we do not find deficient performance. See *Hill v. State*, 351 Ga. App. 58, 68-69 (8) (830 SE2d 478) (2019) ("we do not view a claim of ineffective assistance of counsel with 20/20 hindsight but in light of what was objectively reasonable based on what counsel knew at the time").

Second, as the defense theory in this case did not rely on denying the allegations, but on proving an affirmative defense, it was not unreasonable for counsel not to challenge the State's evidence. See *Deleon-Alvarez v. State*, 324 Ga.

App. 694, 709 (7) (751 SE2d 497) (2013) ("The decision of whether to file a motion to suppress is a matter of professional judgment, and thus will not form the basis for an ineffective assistance of counsel claim unless it was so patently unreasonable that no competent attorney would have chosen it.") (citations and punctuation omitted).

Counsel testified that he was not focused on suppressing the State's evidence, but rather on procuring the expert witness to support the Ambien theory. Moreover, counsel drew the jury's attention to Bernier's cooperation with the investigation to support his contention that Bernier had nothing to hide because he had not willingly assaulted the victim. For example, defense counsel specifically highlighted Bernier's willingness to provide his phone to police, noting to Sergeant Shepard that, before Shepard had even finished asking for the phone, Bernier had handed it over. Accordingly, where filing a motion to suppress was inconsistent with the defense strategy, we conclude that the trial court's ruling on counsel's effectiveness on this ground was not clearly erroneous. *Johnson*, 214 Ga. App. at 78 (1).

(c) Bernier asserts that trial counsel was ineffective for failing to object to the introduction of State's Exhibit 5, which is a video depicting Bernier molesting H. S. while she was sleeping. Bernier argues that the video was not properly authenticated, and would have been subject to exclusion had counsel objected.

Generally, evidence may be authenticated by offering sufficient evidence that a reasonable jury or factfinder could find that the item is what the proponent claims it to be. OCGA § 24-9-901 (a). Video recordings "shall be admissible in evidence when necessitated by the unavailability of a witness who can provide personal authentication[7] and when the court determines, based on competent evidence presented to the court, that such items tend to show reliably the fact or facts for which the items are offered." OCGA § 24-9-923 (b).

Here, the record shows that State's Exhibit 5 was discovered on Bernier's personal cell phone. Moreover, Bernier never denied recording the video or that he was the person whose hands were depicted in the video. Finally, the video depicts an incident similar to another incident that occurred an hour and a half later, to which H. S. testified. Accordingly, there was sufficient evidence to authenticate the video, and any objection that defense counsel would have made to the admission of State's Exhibit 5 was unlikely to have succeeded. Thus, counsel was not ineffective for failing to object to State's Exhibit 5. See *Stuckey v. State*, 301 Ga. 767, 771 (2) (a)

---

[7] Here, there was no available authenticating witness, as Bernier, the person who recorded the video, claimed not to recall recording it, and H. S., the other person in the video, was asleep at the time it was recorded. See OCGA § 24-9-923 (a) (3) (explaining that a witness is unavailable when they claim a lack of memory of the subject matter of the authentication).

28

(804 SE2d 76) (2017) (no deficient performance where defendant failed to show that an objection to the authenticity of photographs would have prevented the evidence from being admitted).

(d) Bernier asserts that trial counsel was ineffective for failing to object to the introduction of State's Exhibit 6, a thumb drive containing videos depicting a woman in the shower. Bernier argues that this evidence was irrelevant, and even if it was relevant, its probative value was substantially outweighed by the danger of unfair prejudice.

Here, State's Exhibit 6 was relevant, as it showed that Bernier had a history of using his cell phone to record others in a clandestine manner, which he had also done during the incident with H. S. See *Patterson v. State*, 350 Ga. App. 540, 546 (2) (829 SE2d 796) (2019) ("any evidence is relevant which logically tends to prove or to disprove a material fact which is at issue in the case, and every act or circumstance serving to elucidate or to throw light upon a material issue or issues is relevant") (citation and punctuation omitted). In fact, defense counsel testified at the motion for new trial hearing that he intended to introduce the thumb drive as a defense exhibit if the State did not introduce it, as he believed that it could support their argument that Bernier might have videotaped H. S. as a kind of habit while in his Ambien-

29

influenced state. Accordingly, because counsel believed that it could support the defense's argument, he reasonably chose not to object to its introduction into evidence. See *Brunson v. State*, 322 Ga. App. 302, 303 (2) (744 SE2d 801) (2013) (finding trial counsel's decision not to object to the State's line of questioning was reasonable trial strategy, where testimony supported the defense theory of the case).

Additionally, because the videos were not shown to the jury, they cannot be said to have affected the outcome of his trial. See *Razor v. State*, 259 Ga. App. 196, 200 (5) (c) (576 SE2d 604) (2003) (no prejudice in admission of evidence that was not published to the jury). Thus, we conclude that counsel was not ineffective on this claim.

(e) Bernier asserts that trial counsel was ineffective for twice eliciting testimony from State witnesses that bolstered H. S.'s testimony. Specifically, he states that trial counsel asked both Jane Ford, the forensic interviewer, and Sergeant Shepard, the lead investigator, if they believed that H. S. was telling the truth.

Here, where Bernier did not deny H. S.'s allegations, but argued the affirmative defense of involuntary intoxication, there can be no prejudice resulting from counsel's actions, as there was no dispute as to whether H. S. was telling the truth or not. Moreover, Bernier himself testified that he did not dispute H. S.'s account of the

30

incident. Accordingly, this claims necessarily fails. See *Rozier v. Caldwell*, 300 Ga. 30, 34 (4) (793 SE2d 73) (2016) (no prejudice for bolstering of a victim's testimony by another witness, where the evidence of guilt was strong and victim's testimony was supported by other evidence).

(f) Finally, Bernier asserts that trial counsel was ineffective for failing to request a pre-sentence investigation that could have revealed additional mitigating circumstances for sentencing or led to a chance that Bernier would be allowed continued contact with his biological children. He also asserts that counsel failed to seek a downward deviation from the mandatory minimum sentence for aggravated child molestation. We disagree.

Here, where Bernier received the mandatory minimum sentence for his convictions, defense counsel was not ineffective for his actions at the sentencing hearing. And Bernier did not testify at the motion for new trial hearing, so any claim that defense counsel could have revealed additional mitigating factors if he sought a pre-sentence investigation is merely speculative, as he did not establish what favorable evidence a pre-sentence investigation would have uncovered. Thus, Bernier does not support his claim of ineffective assistance of counsel. See *Hernandez v. State*, 303 Ga. App. 103, 106 (2) (692 SE2d 712) (2010) (defendant must explain

what witnesses would have testified on his behalf or what their testimony might have been to establish reasonable probability that he would have received a more lenient sentence had counsel conducted further sentencing investigation).

Further, Bernier's claim that defense counsel did not seek a downward deviation from the mandatory minimum is belied by counsel's testimony at the motion for new trial hearing, where he stated that he approached the State on multiple occasions to ask for a downward deviation on the sentence, but the State declined. See OCGA § 17-10-6.2 (c) (1) (stating that a trial court may deviate from the mandatory minimum sentence applicable to certain sexual offenses, but the prosecuting attorney must agree). Accordingly, we find no error on this claim.

For the reasons stated above, we conclude that the trial court did not clearly err in finding that Bernier received effective assistance of counsel. *Johnson*, 214 Ga. App. at 78 (1).

*Judgment affirmed. Dillard, P. J., and Hodges, J., concur*.